Ruffin, Chief Justice,
 

 having stated the case as above, proceeded as follows: — The pleadings do not appear to be so framed as to raise the questions which were considered in the Court below to be involved, and on which his Honor declared his opinion. Yet as this Court does not concur in the principles declared in the decree, and especially in their application to this case, it would be improper to dispose of the cause without some notice of them.
 

 The case is treated in the decree as a partition cause
 
 *534
 
 merely, by one tenant in common against another; in which the defendants set up a sole seisin, first, by virtue a conveyance of the title of the plaintiff by a sheriff ’s sale and deed; and secondly, by virtue of a continued adverse possession of more than seven years, under the colour of a conveyance from Candler to their ancestor. The answer admits that Candler purchased at the sheriff’s sale, as the agent of Zebulon Baird, who was then co-tenant with the plaintiff, and took the conveyance, as his trustee. His Honor was of opinion, that one tenant in common could not purchase the share of his co-tenant at execution sale under any circumstances; and therefore, that this purchase in the name of the trustee was a nullity, and did not extinguish the tenancy in common at law, and certainly not in equity. It followed from that position, that partition ought to be decreed, as if no such sale and conveyance had been made. We do not concur in those premises, nor in the conclusion. The Court is not aware of any decision that a tenant in common cannot, nor of any reason why he may not, purchase the interest of his ■fellow. Their estates are legal and several; the only union between them being that of possession. They do not hold in trust for each other. The rule is only, that the possession of one eo
 
 nomine
 
 is the possession of the other, and that such a possession will therefore never bar his companion. But the relation between them is not such as to forbid one from purchasing from the other, upon the principle on which a Court of Equity regards with jealousy the dealings between persons who stand toward each other in a fiduciary capacity. These estates are so ■completely severed, that, at common law, that of the one could not be passed to the other by release, but required a feoffment and livery of seisin. Why, then, should not ■one purchase the several estate of the other upon execution ? There is nothing in the policy of the law against it. There might be a disadvantage to the debtor by judgment, if the law excluded his companion from bidding, as he would probably give more than any other person. There may, indeed, be dealings between the parties themselves, upon which an accountability had arisen — as upon
 
 *535
 
 the receipt of too much of the profits by one, or outlays in common improvements, or the like, which would render it wrong, as an undue advantage in one, to bring the share of the other to sale; upon which the Court might hold the sheriff’s deed to be only a security for the true balance that might be found upon a general account. But there is no principle of law which is violated by such a purchase; nor any principle of equity, either, in the case declared, and upon the evidence, properly declared, in the decree ; that is to say, that the defendant’s ancestor had no funds of the plaintiff in his hands, applicable to the debt, of which the plaintiff owed one-half; and that the purchase was made with the party’s own money. If a third person have a judgment and execution against one of two tenants in common, his interest may unquestionably be sold ; and the sale is valid against him, both in law and equity. His share is the subject of execution. And we cannot imagine a reason, why his companion may not fairly, in such a case, be a bidder. So, if one tenant in common have a judgment against another, he may sell the share of the debtor. If he may not, while others may, it will amount to the loss of his debt; for the judgment of the companion is not a specific incumbrance, or an equitable lien, which would follow the land in the hands of a purchaser under another execution, as a claim for outlays in improvements might. This case is somewhat different from either of those supposed, inasmuch as the execution was against both the tenants in common for a joint debt. But we cannot conceive that it calls for a different principle. Although the debt was joint, so that each was bound for the whole, yet as between the parties, half the debt was the separate debt of each, regarding them merely as tenants in common. Suppose a judgment against heirs for the debt of the ancestor, can it be ai’gued, that one heir, in order to save his own estate, is bound to pay the whole debt, and then wait to sue his co-heir for contribution, and to have partition also made before he could have satisfaction ? We think he could pay his own proportion of the debt; and then that the proportion of the other heir might be raised by the sale of his share
 
 eo nomine;
 
 at which the heir who
 
 *536
 
 had paid his part might be a bidder. If so, his purchase of the whole undivided land must also be good ; for, in effect, it is the same as paying his part of the debt first. and then buying his companion’s share for his default. It is a very common case, that one brother buys at sheriff’s sale, the undivided estate of another brother in descended lands, either for the debt of the ancestor, or that of the brother himself, contracted after the father’s death; and we believe the legality of such a purchase has never been questioned. It is a legal, several interest, and a s such, subject to execution; and the policy of the law is to invite bidders, and exclude none but those whose
 
 duty
 
 it is, in a legal sense, to make the thing exposed to sale bring the best price. They are excluded, because the interest of a purchaser is to get the thing at the least price; and is therefore directly opposed to this duty. But it is not the duty of one heir, or of one tenant in common, as such, to pay the debts of another heir or tenant in common; nor to aid in the sale of his estate, by getting the best price for it; nor to refrain from buying it, to his own disadvantage — more than it is the duty of any other person, wholly unconnected with them.
 
 Saunders
 
 v.
 
 Gatlin, ante,
 
 vol. 1, p. 86. For the only connexion consists in the
 
 possession ;
 
 and the
 
 estates
 
 are entirely disjoined. The Court therefore does not accede to the proposition laid down, as a general one; and is of opinion, that one tenant in common may, fairly, buy his companion’s share at execution sale. The particular case now before us is precisely parallel to that of the two heirs. Supposing the transaction a fair one, then, the sale and conveyance were effectual to pass the plaintiff’s title. No unfairness is imputed to it in the decree; and, we find no evidence of it in the pleadings or depositions. The debt was originally equally due from both the parties, legally and ■equitably. The brother now deceased gave a security for it, which, from its form, bound him only; but if he had paid it, the plaintiff would have been his debtor for one-half. Indeed, the debt of the plaintiff was not merged in the others’ bond; but being joint and several, the original creditor might still have sued him alone for the whole debt at law. When he made himself legally liable for the judg-
 
 *537
 
 inn t, he did nothing more than he ought to have done, equitably ; and might, by another mode, have been forced to do in a Court of law. There, the evidence is clear, that he refused to pay any part of the debt, upon the false allegation, that the debt was owing wholly by Zebulon Baird; and he even repeats that in his bill as the main, and, as we think, sole ingredient, of his claim to relief; and, indeed, it is one which could not have been resisted, if it had been in fact true. Why was it said to be the debt of Zebulon alone? We find no reason given for it in the bill, except that Zebulon was indebted to Andrew Baird, and gave him his bond. The case is then stated as the ordinary transaction between single persons who are debtor and creditor to each other. With that representation of it, the bill adds, that the plaintiff became the surety of that debtor; and alleges, that he “ became liable only as surety.” But upon the answers and depositions it is found, that the plaintiff’s allegation out of doors was altogether different; and that, admitting the debt to have been originally contracted by him and his brother as partners, he contended, that the brother ought to pay it, because he had partnership effects sufficient. In that sense only, according to the proofs, did the plaintiff denominate the debt as Zebulon’s alone. But in that point the plaintiff has not offered any proof tending to sustain his position. Indeed, upon these pleadings, as will be mentioned more particularly hereafter, he could offer no such proof. Every thing that appears on that point, however, indicates that the truth of the case is on the other side. If, then, the plaintiff in reality owed this debt jointly with his brother, and positively refused to pay any part of it, the creditor might have sold the plaintiff’s share of the land, if his co-defendant had paid his proportion of the debt; or the sheriff might justly, at the request of Zebulon, have raised the plaintiff’s part of the debt out of his estate; and in either case, upon the principles we have mentioned, Zebulon Baird might have purchased. Such was virtually this transaction. Consequently, the tenancy in common was extinguished, as the plaintiff’s estate passed by the sale and sheriff’s deed.
 

 Such being the effect of the sale, it becomes unnecessary
 
 *538
 
 to consider the character of the subsequent possession. The Court, however, does not entertain the opinion, that an actual ouster, or disseisin in fact, is necessary to be shown, jn order to make the possession of one tenant in conjmon adverse to another. It is true, that possession, merfely, or the silent sole perception of the profits, will not constitute adverse possession. But even that, continued without claim, for a long time, will raise every presumption necessary for its sanction.
 
 Thomas
 
 v.
 
 Garvan,
 
 4 Dev. Rep. 223. And we think that where one, who has in fact but. an undivided share, is exclusively in possession, under conveyances for the whole, and notoriously claiming the whole in severalty, the possession can no longer be regarded as the common possession, but must be deemed adverse»
 
 Burton
 
 v.
 
 Murphey,
 
 N. C. Term Rep. 259.
 
 Clapp
 
 v.
 
 Brougham,
 
 9 Cowen, 530. More especially must this be true, if the possession should be taken under colour of a conveyance for the share of one of the co-tenants, as such, though the conveyance might turn out to be ineffectual. Here the entry in 1817, by Zebulon, was under the deed for the land sold as his own, and as the plaintiff’s. That possession could not be the common possession; for he claimed the plaintiff’s share against him, and sold parts as sole owner; consequently, the possession must be adverse. If the sale were irregular, or the execution defective, yet the deed was a good colour of title; under which the possession for seven years ripened into an indefeasible title by the destruction of the plaintiff’s right of entry.
 

 In truth, however, these parties were not mere tenants in common. The answers state, and the evidence proves, that they were general mercantile partners, and that these lands were part of the partnership effects. Tate, the principal witness of the plaintiff, says, that both the parties so informed him repeatedly. They were, therefore, joint tenants, as copartners. That fact thus put in issue by the answers and replication, ought to have been declared in the decree. If it had been declared, it must have put an end to the supposed tenancyin common, and the right supposed to be asserted, to partition of these particular lands, as being held in common, or in joint tenancy simply.
 
 *539
 
 There can be no division of partnership property until all the accounts of the partnership have been taken and the clear interest of each partner ascertained. Partners do not necessarily hold equally. They hold according to the sums they are res pectively entitled to receive from the common stock. The usual decree is to sell every thing and turn all into money for a division. But if the partners are made equal out of other effects, and then lands remain, they may, no doubt, be specifically divided. That however cannot be known, until the partnership accounts have been settled between the parties, or taken under the order of the Court. The bill in this case does not alledge a settlement ; nor as much as allude to the partnership itself, but seems purposely to evade it. The accounts of the partnership therefore, could not be taken under it. If they were taken and Zebulon found to be a creditor of the firm as alleged by him, the lands would undoubtedly be liable for the general balance due to him, and not merely for half the sum advanced by him on the sheriff’s sale. Consequently it was indispensable to take the accounts to do justice between the parties. As that could not be done upon these pleadings, it was a complete answer to the bill, when it appeared that the land in question and the debt for the cattle, were items merely, in the assets of the mercantile concern. A partner cannot demand an account in respect of particular items, and a division of particular parts of the property: but the account must necessarily embrace every thing, for the reasons just mentioned. It may be said that after such a length of time, a bill for an account of the partnership would be barred, and a settlement or satisfaction presumed; and, therefore, that these lands may be taken as a clear surplus remaining and divisible equally between the parties, as joint tenants simply. That may be admitted ; for we think it correct, provided it appear, that the partners were equally interested ; and provided further, that the lands continued to be treated by the parties as joint property, in which each was equally concerned. But that is not our case. The ancestor of the defendants and the plaintiff, each, denied an equal interest in the other. The plaintiff alleged that his
 
 *540
 
 brother had other funds of the firm in his hands, which rendered him a debtor to the plaintiff; while Zebulon insisted that both the firm and the plaintiff were indebted t0 him, and for each balance looked to these lands as a security. It may be true, that Zebulon could not enforce his claim by a bill for an account at so late a day as 1827, when this bill was filed. But if the plaintiff would lie by until his co-partner could not have the accounts between them taken, by reason of the staleness of the demand, surely it must, for the same reason, be too late for the plaintiff to claim a division of the specific lands, in. character of joint tenant simply, and without taking the accounts and avoid these conveyances by which while they stand, the joint tenancy is extinguished, and the land become vested in severalty in the other party. From the time the parties ceased to treat this land as common property, it could no longer be looked on in a Court as mere real estate belonging to them equally, for the purpose of partition, in the light now spoken of. It may be, indeed, that the plaintiff, after such unreasonable laches, and upon a suit brought after the death of his partner, who alone could adjust the accounts, with an accuracy at all satisfactory, ought not to have a decree upon any other principle than allowing the accounts as stated and left by his deceased partner. But whether that be so or not, the delay will not in the case which has happened, exempt him from the necessity of the account and authorise partition without taking it. For this land was not regarded by either party as common property; but it was claimed, possessed and disposed of as the sole property of one of them, for such a length of time, and under such circumstances, as in a case of a tenancy in common, would be evidence of an ouster, and make a title under the statute of limitations ; and perhaps also, for like reasons, would terminate the trust between the parties as partners; and in this Court, in analogy to the rule at law, put the statute of limitations in motion on behalf of the possessor. At all events the plaintiff cannot rely on his own laches, to excuse him from the account of the partnership, and authorize him to call for a
 
 *541
 
 division of these estates as remaining specifically of the assets of the partnership.
 

 But in reality the pleadings present neither of the questions that have been discussed; and no relief can be granted but upon the facts alleged in the bill, and such as is consistent with those allegations, and the prayer founded on them. This bill is as meagre in its allegations as can well be imagined, and as limited in the prayer as possible. It sets forth no general partnership, and of course asks for no account of it. “ The partnership moneys” mentioned in it are necessarily confined to the sums of five hundred and fifty-one dollars, and one thousand four hundred and seventy dollars, previously spoken of, as the prices of a lot of cattle sold by the two, and of parts of the land jointly owned, which were sold by Zebulon. Those transactions are set forth as merely isolated transactions of limited joint dealings, and in no way connected with a general partnership. The draftsman of the bill, did not mean that his client should submit to a general account in order to get a moiety of the lands; but the intention was to get it without the account. The partnership was therefore purposely kept out of sight. Upon those transactions, as stated, the plaintiff had no claim upon the heirs of Zebulon, but only against the personal estate into which the money had gone; and from the payment of it, as money had and received, the administrator was properly held to be protected by the statute of limitations. It is not seen why that matter was put into the bill, wdiich was to pray the relief sought in respect of the land ; but as a pretence under which evidence might be given to establish that the debt to Andrew Baird ought to have been paid by Zebulon, although it was originally against both. But it cannot have the effect of admitting proof with that view, since the charges of the bill on that point are precise, that the debt was
 
 never
 
 that of the plaintiff, except
 
 as surety only
 
 for Zebulon.
 

 Then the case stated with respect to the land is nothing more than that those parties purchased lands jointly, and held them jointly; and that Zebulon became indebted, and the plaintiff became his surety; and that,
 
 *542
 
 upon a joint judgment against them therefor, Zebulon procured the land of the plaintiff to be sold, and indirectly Purchased it himself. The bill further alleges, indeed, that Zebulon set up, as a very insufficient pretence for such manifest bad faith and wrong, that the plaintiff was indebted to him ; which pretence, the bill states, was altogether unfounded, for, “ upon an account of all the partnership moneys received as aforesaid,” the balance was the other way. This shows what partnership was in the mind of the pleader; “
 
 as aforesaid,”
 
 referring particularly to the two sums before-mentioned as the prices of cattle and land sold. As for the other words in this part of the bill, respecting moneys received “ on other accounts, not now known or rememberedthey must be admitted to be too vague for any purpose. The charge respecting those moneys, so far as it is connected with relief in respect of the title of the land, is introduced merely to repel the pretence of Zebulon of the plaintiffs indebtedness to him on other accounts. It is true, that for the reasons before given, neither party has proved, or could prove in this cause, on which side the indebtedness was, since it arose on general partnership dealings, which cannot here be inquired into. It may be taken, however, either way, and it will not affect the rights of the parties, in respect of the land upon the questions made here. For whatever sum the plaintiff might have owed to Zebulon, it would be a plain and gross fraud in the latter to sell, or procure to be sold, the plaintiff’s land for a debt of Zebulon, for which the other was bound merely as surety, and to become the purchaser himself. Such a case could not receive the least countenance in a Court of justice; but the plaintiff Would be entitled to relief against such abuse of his confidence, and of the process of the law, without any regard to the land being before held in severalty by him, or jointly by Zebulon and himself. The slightest inspection of the bill shows, that such is the gravamen, and solely the gravamen of the plaintiff’s case, as stated in it. It is true, there are general words, of the sale of the plaintiff’s moiety being “ unjust, iniquitous, and fraudulent.” But epithets of that sort are unmeaning and impertinent in
 
 *543
 
 pleading, unless they be used in reference to facts stated, which render, and whereby it may appear, that the act complained of, is legally fraudulent. In other words, the facts constituting the fraud must be alleged before proof of them can be received, or the Court act on the general allegation. Here the only facts stated are those mentioned ; namely, that the principal debtor contrived to have the land of the surety sold under the execution and purchased it himself. That turns out to be untrue; for the debt was originally a joint one, and there is nothing appearing, or can appear in this suit, to show that the joint property of the debtors, ought not to have been sold to satisfy it; or that the several property of the plaintiff ought not to have paid one-half of it. That being established, the plaintiff’s case, as made in his bill, was answered, and the bill should have been dismissed. Here may be noticed that part of the decree, which declares that each of the parties had personal property sufficient to satisfy the execution, as was known to the sheriff and Zebulon Baird. That would be material evidence of one species of fraud. But it would be one entirely different from that brought forward by the plaintiff, and is not suggested in the bill. The Court could not, therefore, act cn it. The fraud here complained of, consists of one man’s selling the property of another, for a debt which the former alone owed, and his buying it and holding it from his surety. That the view of the bill here taken is correct, is confirmed by a recurrence to the relief prayed in respect of the land. It is not for a sale as partnership property, nór for a division as of lands held jointly or in common. Partition was not in the contemplation of the writer, for the bill does not even describe or identify the lands. He conceived that the joint estate was extinguished by the sale and deeds; and his object so far from being a partition, was to restore the original character of the estate, as it was before the sale, and that was his sole object. The prayer is for a discovery of the titles set up by the defendants for the lands which the sheriff had sold, that the Court may see whether they correspond with those stated by the bill; and if so, that
 
 *544
 
 the defendants may be decreed “ to give up the sheriff’s and Candler’s deeds to be cancelled, or may convey to the plaintiff.” Here is not a glance of thought towards a partition. The sole relief sought is, that the deeds may be declared void, as being fraudulent, upon the single ground mentioned in the charging part of the bill; and that, thereupon, they may be put out of the plaintiff’s way, either by cancellation or a reconveyance; the effect of which would be to let him, unless otherwise barred, get into possession again, or to consider the possession held by the other as a common possession. It seems to the Court, therefore, that all that was done in the Court below was out of the case; and that the proper decree in respect of the land would have been, to declare that the debt on which it was sold, was not the several debt of Zebulon Baird, but the joint debt of him and the plaintiff; and therefore, that the plaintiff had not proved i/ie fraud alleged by him, and upon which he claimed to have the deeds declared void; and thereupon to have dismissed the bill with costs. The money received for land sold by Zebulon since the purchase at sheriff’s sale, stands on the same ground with the land itself; and, therefore the bill ought to be dismissed as to that also. The other moneys, that is to say, those received for land previously sold, and for the cattle, have already been disposed of, upon the ground that they are general partnership assets, or that the administrator was alone liable for them, and is protected by the statute of limitations. As the decree pronounced was not final, and the cause remains in the Court of Equity, this Court cannot reverse it, and pronounce such decree here as ought to have been made; but this opinion must be certified to the Court of Buncombe, that the former decree may be there reversed, and one entered in conformity to the directions now given. The plaintiff must also ,pay the costs in this Court.
 

 Bek CuRiam. Direct accordingly.