This is a civil action instituted on 21 October, 1942, to recover damages arising out of fraud alleged to have been perpetrated by the defendant upon the plaintiff.
The plaintiff's evidence tends to show that in the year 1929 the plaintiff received $7,000.00 from a life insurance policy held by her late husband; that the plaintiff lived in Germanton, North Carolina, and the defendant lived at Spencer, North Carolina; that the plaintiff and defendant had been friends and neighbors in the years gone by in Spencer; that in June, 1929, the plaintiff wrote defendant that she had the money and wished to invest it, and asked the defendant's opinion as to depositing it in the Bank of Stokes; that the defendant replied to plaintiff's letter by offering to invest the money for her in paper "as good as gold," paper then held by the bank in Spencer in which the defendant was employed; that as a result of defendant's letter the plaintiff went to Spencer to see the defendant and in the bank in Spencer discussed the loaning of the money with the defendant, and was told by the defendant that if he was allowed to invest the money "he would put it where it was as good as gold"; that the plaintiff returned to her home in Germanton and there received a letter from the defendant under date of 11 June, 1929, enclosing check on the Wachovia Bank Trust Company, where the plaintiff had the money deposited, made out for $6,915.00 with the statement, "I have two mortgages on good homes in Salisbury, North Carolina. Amount of both mortgages $6,915.00. . . . If you want me to handle your money for you, you can sign the enclosed check and return back to me"; that the plaintiff signed the check and mailed it to the defendant; that the defendant cashed the check and with the funds derived therefrom purchased two notes from the Bank of Spencer, one for $1,500.00 from one Meinus, and one for a balance of $5,415.00 from one John L. Nix and wife, both notes secured by real estate mortgages on real estate in Salisbury, North Carolina; that the principal and interest on the Meinus note was collected in due course, and is not involved in this litigation; that $5,415.00, the balance realized on the check, was invested in the purchase of the Nix note; that the Nix note was dated December 2, 1924, due six months after date, and was therefore more than four years past due at the time of its sale to the plaintiff; that the Nix note was originally for $6,000.00, but had been reduced by partial payment thereon, and was secured by deed of trust in which the defendant was trustee, and was held by the Bank of Spencer; that the note had been given for the balance of $6,800.00 of purchase money for a house and lot in Salisbury sold to Nix and wife by the defendant; that the drawers of the note, the Nixes, began paying $80.00 per month on the note, but such payments had dropped to $36.00 per month prior to the *Page 757 
time defendant invested the plaintiff's money in the note; that the depression of 1929 was at its depth and the officers of the bank, including the defendant, had been instructed to clear the bank of all real estate loans, including the Nix note, prior to the time the sale of this note was made to the plaintiff. The evidence tends further to show that notwithstanding the situation surrounding this note the defendant represented to the plaintiff that the note was one of the best investments in which to put her money, and that it "was as good as gold," and she could get her money out of it any time she wished, as the real estate securing the note would always be there unless destroyed by a cyclone or an earthquake, and, that the defendant represented to the plaintiff that Nix and his wife, the makers of the note, were financially responsible, and that the value of the real estate securing the note was greater than the amount of the note, and that real estate was an advisable investment at that time, and further that the defendant agreed to look after the property, see that the taxes and insurance were kept paid, and generally to handle the investment in an efficient manner, all of which he neglected and failed to do; that from 1929 until the property was sold for taxes in 1942, the defendant continued to represent to the plaintiff that the investment was a good and safe one, and on one occasion when the Nixes failed to make any payments the defendant told plaintiff that this was due to the fact that the Nixes had been sick, which statement was false and known by the defendant to have been false; that on one occasion when plaintiff asked for her money the defendant advised her that the Nixes could obtain an HOLC loan for the major portion of the amount due on the note and pay to her such amount, and execute to her a second mortgage for the balance due her, which second mortgage would be perfectly good, and that this representation was false; that about 1933 the Nixes informed the defendant they could not pay for the property, and the defendant insisted that they stay on in it and pay what they could as rent, and the Nixes stayed on under these circumstances for nine years, and the defendant never communicated this circumstance to the plaintiff; also during this period from 1929 to 1942, at various times the Nixes made certain payments on the note to the defendant which the defendant failed to account for to the plaintiff, the then owner of the note, and on one occasion when the plaintiff made urgent demands for payment of the note, in part or in whole, the defendant paid to the plaintiff the sum of $388.00, which he had withheld from payments made to him by the Nixes, to make it appear that they had paid this total amount on the note at one time, thereby giving the appearance of ability of the Nixes to make such payment upon demand, which ability they never possessed; that such actions on the part of the defendant in withholding many smaller payments and then paying at one time a larger payment *Page 758 
and representing that such larger sum had just been paid upon demand were taken to allay any suspicion on the part of the plaintiff and to forestall any investigation that the plaintiff might otherwise have made; that no repairs were made on the house on the real estate securing the Nix note, and the termites almost destroyed it; that no taxes were paid on the house and lot after 1931, and in 1937 suits were instituted by Rowan County and the City of Salisbury to sell the property on account of nonpayment of taxes, and, although summons in the tax suits were served on the defendant as trustee in the deed of trust on the real estate, he did not advise the plaintiff of such actions until after the property was sold for taxes in 1942.
The evidence further tends to show that in April, 1942, the plaintiff learned for the first time the true facts with respect to the representations made to her by the defendant, and proceeded to redeem the property from the purchaser at the tax sale and to pay off the tax judgments; that the plaintiff realized $1,998.39 from the sale of the house and lot, net to her; that there was due on the principal of the note and the accrued interest at that time the sum of $6,680.82; that the loss to the plaintiff was $4,382.43, and this suit was instituted by her for that amount.
The evidence tends not only to show that the plaintiff and defendant were erstwhile neighbors in Spencer, but they were friends of many years standing, that the plaintiff was a woman 65 years of age with no business experience, and very limited education, while the defendant was a man of long business experience, being a banker, investor and real estate dealer for many years.
It is the contention of the defendant that he did not make false and fraudulent representations to the plaintiff; that even if it should be found to the contrary, the plaintiff had made discovery of all the facts and circumstances alleged as constituting the fraud, more than three years next preceding the institution of this action, and he pleads the three year statute of limitations (C. S., 441 [9]) in bar of the plaintiff's recovery; and that the plaintiff has ratified the acts of the defendant and is thereby estopped to prosecute this action.
When the plaintiff had introduced her evidence and rested her case, the defendant lodged a motion for judgment as in case of nonsuit (C. S., 567), which motion was allowed, and from judgment predicated on such ruling the plaintiff appealed, assigning errors.
The first question which arises on this appeal is: was there sufficient evidence of fraud to survive the demurrer thereto? The answer to this question is in the affirmative.
The evidence is to the effect that the defendant, a banker of experience and a friend of the plaintiff, a woman of no business experience, in response to her request of him for advice as to depositing her money in a certain bank replied that he could invest her money for her so she would realize 6% therefor, that he could and would invest it so it would be "as good as gold," that he would invest it in notes held by the bank and secured by mortgages on real estate worth much more than the amount of the notes, and that plaintiff would receive her interest regularly and could collect the principal at any time she might desire; as a result of these representations the plaintiff placed her money in the hands of the defendant for investment and defendant invested $5,415.00 in a note executed by one John L. Nix and wife, dated 2 December, 1924, due in six months, which was more than four years past due, which investment was not good as gold, and the real estate securing the note was of less value than the amount of the note, and the plaintiff was not paid her interest regularly and was unable to collect the principal when she tried so to do. The evidence is further to the effect that at the time of the sale of this note to the plaintiff in 1929 the national depression was at its full depth, that real estate was of doubtful and uncertain value, and not advisable for investments.
The evidence tends to show further that the plaintiff relied upon the representations made to her by the defendant, and acted upon them by allowing the investment to be made upon the security recommended by the defendant, and that she suffered by such reliance in that she lost heavily upon such investment.
The specific representations made by the defendant to the plaintiff which the evidence tends to show were false, and known by the defendant to be false, were that the investment would be made in securities "as good as gold," that the Nixes, makers of the note, were financially responsible, that the defendant would see to the payment of the taxes upon the property securing the note, that the Nixes could and would secure an HOLC loan to pay plaintiff the larger portion of the note and give her a second mortgage for the balance due thereon; that the property securing the note was of greater value than the amount of the note.
Stacy, C. J., in Stone v. Milling Co., 192 N.C. 585, 135 S.E. 449, writes: "The general conditions under which factual misrepresentations may be made the basis of an action for deceit are stated in Pollock on Torts (12 Ed.), 283, as follows:
"`To create a right of action for deceit there must be a statement made by the defendant, or for which he is answerable as principal, and *Page 760 
with regard to that statement all the following conditions must concur:
"`(a) It is untrue in fact.
"`(b) The person making the statement, or the person responsible for it, either knows it to be untrue, or is culpably ignorant (that is, recklessly, and consciously ignorant) whether it be true or not.
"`(c) It is made to the intent that the plaintiff shall act upon it, or in a manner apparently fitted to induce him to act upon it.
"`(d) The plaintiff does act in reliance on the statement in the manner contemplated or manifestly probable, and thereby suffers damage.'
"This formula has been approved by us in a number of decisions: CorleyCo. v. Griggs, ante, 171; Simpson v. Tobacco Growers, 190 N.C. 603;Hollingsworth v. Supreme Council, 175 N.C. p. 635; Whitehurst v. Ins.Co., 149 N.C. 273."
C. S., 441 (9), reads: "For relief on the ground of fraud . . .; the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud. . . ." Therefore, the second question which arises is: was there sufficient evidence that the plaintiff did not make discovery of the facts constituting the fraud of the defendant until the three years next preceding the institution of this suit on 21 October, 1942, to be submitted to the jury on an issue relating to the three year statute of limitations pleaded by the defendant? The answer is in the affirmative.
In the first place, the evidence discloses that the relationship, both business and social, existing between the plaintiff and defendant, were such that the plaintiff was justified in having implicit confidence in the defendant — she was a woman 65 years of age without business experience; he was a younger man with wide business experience; they had been close associates, neighbors and friends in the years past. Therefore, when she made inquiries of the defendant as to the collection of the interest or a portion of the principal of the note, and was assured by the defendant that the investment was safe, and the security ample, she was thrown off her guard and led away from the discovery of the actual facts as they existed until she was informed in 1942 of the sale of the property under tax suits instituted in 1937. The evidence tends to show that she was lulled to sleep by the blandishments of the defendant, in whom she placed absolute trust.
"The parties were not at arm's length in reference to these representations and did not have equal opportunities of informing themselves." May v. Loomis, 140 N.C. 350 (356), 52 S.E. 728. "The law does not require a prudent man to deal with everyone as a rascal, and demand covenants to guard against the falsehood of every representation which may be made as to facts which constitute material inducements to a contract." Griffin v. Lumber Co., 140 N.C. 514 (518), 53 S.E. 307. *Page 761 
Especially is this so when there exists a fiduciary relationship between the parties. Abbitt v. Gregory et al., 201 N.C. 577, 160 S.E. 896;Bolich v. Ins. Co., 206 N.C. 144, 173 S.E. 320.
The contention advanced by the defendant that the statements made by him to the plaintiff were mere promissory statements and that the representations so made were mere opinions expressed and were therefore not sufficient upon which to bottom an action in fraud is untenable. Bispham's Equity (9 Ed.), sec. 211, is quoted with approval in McNair v. Finance Co.,191 N.C. 710 (717), 133 S.E. 85, as follows: "But if a promise is made with no intent to perform it, and merely with a fraudulent design to induce action under an erroneous belief, or if a representation amounts to a statement of fact, although dependent upon future action, in either case there is ground for equitable relief." There is evidence in the record from which the jury might well have inferred and found that the defendant never intended to perform his promise to see that the taxes on the real estate securing the note sold to the plaintiff would be paid, and that the necessary repairs would be made thereon, and that the loan would be handled in an efficient and business-like manner; and that such statements were made at the time of negotiating the loan and continued throughout the years from 1929 to 1942 to prevent any personal investigation by the plaintiff of the true status of the loan and its security.
It is generally held that where there is concealment of fraud or continuing fraud, the statute of limitations does not bar a suit for relief on account of it, and thereby permit the statute which was designed to prevent fraud to become an instrument to perpetrate and perpetuate it. InMask v. Tiller, 89 N.C. 423, it is written: "It (statute of limitations) ought not, therefore, to be so construed as to become an instrument to encourage fraud, if it admits of any other reasonable interpretation." InUnitype Co. v. Ashcraft, 155 N.C. 63, 71 S.E. 61, it is said: ". . . though the declarations may be clothed in the form of opinions or estimates, when there is doubt as to whether they were intended and received as mere expressions of opinion or as statements of facts to be regarded as material, the question must be submitted to the jury."
In this case the plaintiff testified that she did not actually learn of the deceit of the defendant until 26 March, 1942, when she was first informed of the tax sales. She had constituted the defendant her agent to invest her money and relied implicitly upon him. The law applicable is well stated in 34 Amer. Jur., Limitation of Actions, par. 168, p. 135, as follows: "Where a confidential relationship exists between the parties, failure to discover the facts constituting fraud may be excused. In such a case, so long as the relationship continues unrepudiated, there is nothing to put the injured party on inquiry, and he cannot be said to *Page 762 
have failed to use due diligence in detecting the fraud. . . . Similarly, an agent, sued for fraud, cannot set up that the principal should have suspected him."
It is apparent from the record that there is some evidence, more than a scintilla, that the plaintiff made no discovery of the facts constituting the fraud alleged prior to the three year period next preceding the institution of this action.
The third question here presented arises from the allegation of the defendant that the plaintiff has ratified the acts of the defendant and is thereby estopped to prosecute this action. This allegation, the burden of proof of which rests on the defendant, is not supported by such evidence as to justify the court in holding as a matter of law that such estoppel existed, and, in effect, directing a verdict in favor of the defendant.
It is the contention of the defendant that since the evidence of the plaintiff tended to show that the plaintiff, after she discovered the fraud of the defendant in 1942, marked the note and deed of trust securing it "fully paid and satisfied" when the Nixes sold the real estate, the plaintiff released the security for the note and released the Nixes from further personal liability, and that such action on the part of the plaintiff was in derogation of the defendant's interest.
The action of the plaintiff in marking the note and deed of trust paid and satisfied was taken so as to clear the title and permit the real estate to be sold and thereby enable the plaintiff to realize what she could out of the security. One of the remedies open to a person who has been defrauded is to ratify the contract and keep the consideration received and sue for damages occasioned by the fraud, Fields v. Brown, 160 N.C. 295,76 S.E. 8; Buick Co. v. Rhodes, 215 N.C. 595, 2 S.E.2d 699. This remedy the evidence tends to show the plaintiff sought in this case. If the real estate was sold for less than its value or if the defendant was injured by the release of the makers of the note and deed of trust, such damage as he suffered therefrom should be adjudicated upon an issue relating to the measure of damage. Certainly the evidence in the instant case, all of which was introduced by the plaintiff, does not justify the court holding as a matter of law that the estoppel plead by the defendant has been established. The burden of proving the estoppel was upon the defendant. The plaintiff, after learning of the fraud of the defendant, could ratify the contract, keep what she received and institute suit against the defendant for such damage as she suffered by reason of such fraud. Her ratification of the contract constituted no bar to her claim for damages on account of the fraud perpetrated upon her, but is in substantiation thereof. Buick Co. v. Rhodes, supra. Thus the plaintiff could give away the Nix note, sell it for whatever she could get for it, or do whatsoever she pleased with it, since it was hers, so likewise she *Page 763 
could release the security therefor, and the only complaint that the defendant could be heard to make was that the note, with its security, was worth something and that the plaintiff gave away this value or released it for less than its worth, and thereby increased the liability of the defendant. This question arises, however, only on the issue of damages — and not estoppel.
The judgment of the Superior Court is
Reversed.