NATIONAL SPINNING COMPANY, INC. v. McLEAN TRUCKING COMPANY.

(Filed 3 March, 1965.)

1. **Trial § 21—**
   On motion to nonsuit, plaintiff's evidence is to be considered in the light most favorable to it.

2. **Negligence § 26—**
   The sufficiency of the evidence to overrule nonsuit must be determined in the light of the facts of each particular case, and nonsuit cannot be granted when the relevant facts are in dispute or opposing inferences are permissible from plaintiff's proof.

3. **Carriers § 7— Evidence held for jury on issue of carrier's negligence in failing to provide trailer reasonably safe for unloading.**
   Evidence favorable to plaintiff tending to show that defendant's driver detached its trailer at plaintiff's dock for unloading by plaintiff's agents when the shipping documents should be received by plaintiff, that the driver set the air brakes but did not chock the wheels, and that when plaintiff's agents were unloading the trailer several days later the trailer rolled down the incline from the dock, causing the loading ramp which was spanning the distance between the trailer and the dock to fall with plaintiff's fork lift thereon, *held* sufficient to be submitted to the jury on the

issue of defendant's negligence in failing to exercise reasonable care to supply a trailer in a reasonably safe condition for unloading, and not to disclose contributory negligence as a matter of law.

APPEAL by plaintiff from *Cowper, J.,* October 1964 Session of BEAU-FORT.

This is an action to recover for damage to plaintiff's fork lift or tow motor in the sum of $2,342.52, allegedly caused by the negligence of the defendant.

On 16 August 1961, the defendant delivered a trailer load of nylon yarn to the premises of the plaintiff. Upon opening the trailer it was discovered that the shipper had failed to include the packing slip or shipping documents. The defendant's driver was informed by plaintiff's agent, Mr. Nelson, the receiving clerk, that he could not unload the trailer without the shipping documents. The defendant's driver then obtained permission from his superior in Rocky Mount, North Carolina, to detach the trailer and leave it on the plaintiff's premises, pending the arrival of the shipping documents. The trailer was to be unloaded by the plaintiff upon receipt of the shipping documents, under the supervision of Mr. Nelson.

Pursuant to the plaintiff's instructions, the defendant's driver backed the trailer to plaintiff's dock, parked it, locked the air brakes, cranked down the little wheels in front of the trailer, detached the tractor from the trailer and drove away. Plaintiff's agent, Mr. Nelson, observed the manner in which the trailer was detached and inquired of the driver as to whether or not he was going to chock it. The driver said, "Oh, hell, it will hold." This statement was purportedly made immediately before the defendant's driver drove the detached tractor away without chocking the wheels of the trailer.

Five days later, on 21 August, the plaintiff undertook to unload the trailer under the supervision of its agent, Mr. Nelson.

The trailer had been loaded four cases across and four to five cases high. Each case weighed approximately 110 pounds. According to the evidence, the trailer had been backed up against the plaintiff's unloading dock. The dock is about 4½ feet from the ground. The driveway adjacent to the unloading dock slopes downhill away from the dock so as to facilitate drainage, to prevent water from standing in the dock area. A ramp, consisting of "a big steel piece of iron" and weighing approximately 300 pounds, was used as a gangplank over which the motorized fork lift or tow motor could travel in and out of the trailer in order to lift the pallets of yarn.

The motorized fork lift weighed approximately 2,000 to 2,500 pounds and was being operated at the time by Scott Ross (no longer employed

by plaintiff and who was living in New York at the time of the trial) under the supervision of Mr. Nelson. The first few cases were removed by hand. Thereafter, the fork lift or tow motor was driven into the trailer. Inside the trailer, sixteen to twenty cases were loaded on a wooden pallet, then picked up with the fork lift and driven from the trailer. Using this method, some 300 cases of yarn were removed on some eleven or twelve trips into and out of the trailer.

When the fork lift was backing out of the trailer with the last loaded pallet, the trailer suddenly rolled forward about six feet, causing the unloading ramp and the fork lift to fall to the ground between the trailer and the platform or dock, severely damaging the fork lift.

According to the plaintiff's evidence, it is a custom in the trucking industry to set the brakes on a trailer when it is disconnected from the tractor and to also chock the wheels. The length of time the air brakes will hold on a disconnected trailer depends on the condition of the equipment. There was evidence tending to show that such brakes would hold for a few days to a month or so, depending on whether there was a leak in the air brakes. Plaintiff also offered evidence to the effect that it did not move the trailer between the time defendant's driver placed it on plaintiff's premises and the day it was unloaded.

Defendant offered evidence to the effect that it was not a custom in the trucking industry to chock the wheels of a trailer when it was detached from the tractor. On the other hand, its driver, who parked the trailer involved, testified that he did chock the trailer when he parked it, "that is a standard custom in the trucking industry." This witness also testified that the trailer had been moved approximately twelve feet down the dock from where he had left it, before it was unloaded. It was established that there were materials adequate for chocking in the dock area.

At the close of all the evidence the defendant renewed its motion for nonsuit, and the trial court sustained the motion. The plaintiff appeals, assigning error.

*Rodman & Rodman for plaintiff appellant.*
*Spry, Hamrick & Doughton for defendant appellee.*

DENNY, C.J. The plaintiff's sole assignment of error is to the allowance of defendant's motion for judgment as of nonsuit at the close of all the evidence.

In our opinion, when the plaintiff's evidence is considered in the light most favorable to it, as it must be on a motion for nonsuit, it is sufficient to carry the case to the jury. *Thomas v. Morgan,* 262 N.C. 292, 136 S.E. 2d 700; *Smith v. Corsat,* 260 N.C. 92, 131 S.E. 2d 894; *Scott*

*v. Darden,* 259 N.C. 167, 130 S.E. 2d 42; *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307.

The defendant argues and contends that plaintiff's evidence adduced in the trial below established contributory negligence as a matter of law.

The evidence of the plaintiff and that of the defendant bearing on the pertinent issues with respect to negligence and contributory negligence, is in sharp conflict.

Whether a nonsuit should be granted on the ground of contributory negligence must be determined in light of the facts in each particular case. *Tew v. Runnels,* 249 N.C. 1, 105 S.E. 2d 108.

"Nonsuit on the issue of contributory negligence should be denied when the relevant facts are in dispute or opposing inferences are permissible from plaintiff's proof. Contradictions in plaintiff's evidence do not justify nonsuit on the issue." Strong's North Carolina Index, Vol. 3, Negligence, § 26, page 475; *Wilson v. Camp,* 249 N.C. 754, 107 S.E. 2d 743; *Murray v. Wyatt,* 245 N.C. 123, 95 S.E. 2d 541; *Gilreath v. Silverman,* 245 N.C. 51, 95 S.E. 2d 107.

In the case of *Yandell v. Fireproofing Corp.,* 239 N.C. 1, 79 S.E. 2d 223, Ervin, J., speaking for the Court, said: "An initial carrier by rail, which furnishes a car for moving freight, owes to the employees of the consignee, who are required to unload the car, the legal duty to exercise reasonable care to supply a car in reasonably safe condition, so that the employees of the consignee can unload the same with reasonable safety. (Numerous cases cited.) A delivering carrier by rail, which delivers to the consignee for unloading a car received by it from a connecting carrier, owes to the employees of the consignee, who are required to unload the car, the legal duty to make a reasonable inspection of the car to ascertain whether it is reasonably safe for unloading, and to repair or give warning of any dangerous condition in the case discoverable by such an inspection. (Numerous cases cited.)"

In *Honeycutt v. Bryan,* 240 N.C. 238, 81 S.E. 2d 653, the defendant transported a load of structural steel from Charlotte to the site of a building then being erected in Morganton by Herman Sipe Company. When the defendant arrived at the site of the building under construction, he placed his truck as directed by Sipe's foreman. This put the tractor on a slight decline to the left rear. In unloading I-beams, 20 feet long and 21 inches wide, weighing approximately 1,237 pounds each, the unloading proceeded without mishap until the front end of the fourth beam hooked to some part of the trailer. Plaintiff asked defendant if it would be safe to walk up the beams to the front "to get that one loose," and defendant told him it was safe. Plaintiff got on the truck and started to walk up the beams to the front, when the rear standard of the truck bent and the beams began sliding off the truck

and plaintiff was injured. Barnhill, J., in speaking for the Court, after quoting the above portion of the opinion in *Yandell v. Fireproofing Corp., supra,* said: "Since the defendant was both the initial and delivering carrier, he owed to Sipe's employees the duty (1) to exercise reasonable care to furnish a vehicle in reasonably safe condition so that the employees of Sipe could unload the trailer with reasonable safety, and (2) to make a reasonable and timely inspection of the vehicle to ascertain whether it was reasonably safe for unloading, and to repair or give warning of any dangerous condition in the trailer discoverable by such inspection." The verdict rendered in favor of the plaintiff was affirmed.

In our opinion, the instant case is one for the jury on the issues of negligence and contributory negligence, and we so hold.

Reversed.