EVA R. BENNETT, SURVIVING WIDOW, AND CLIFTON C. BENNETT, SURVIVING SON OF C. C. BENNETT, DECEASED, AND EVA R. BENNETT, ADMINISTRATRIX OF C. C. BENNETT, DECEASED, PLAINTIFFS v. THE ANSON BANK & TRUST COMPANY, EXECUTOR OF THE ESTATE OF ROSALIE POLK BENNETT, AND THE ANSON BANK & TRUST COMPANY, ADMINISTRATOR, *c. t. a., d. b. n.* OF THE ESTATE OF PURDIE RICHARDSON BENNETT, DEFENDANT.

(Filed 23 July 1965.)

**1. Limitation of Actions § 17—**

Upon defendant's plea of the applicable statute of limitations, the burden devolves upon plaintiffs to show that their action was instituted within the time allowed.

**2. Partnership § 3—**

The fiduciary relationship existing between partners entitles one partner to demand an accounting of the other upon request, and the statute of limitations does not begin to run against the right to such accounting until one partner has notice of the other's termination of the partnership and his refusal to account.

**3. Partnership § 9—**

The death of one partner ordinarily terminates the partnership and entitles his personal representatives to sue the surviving partner for an accounting immediately upon the failure of the surviving partner to file an accounting with the clerk within twelve months from the deceased partner's death. G.S. 59-82.

**4. Limitation of Actions § 7—**

A cause of action for fraud is not barred until three years after the fraud constituting the basis of the action is discovered or should have been discovered, and where a confidential relationship exists the failure to discover the facts constituting the fraud may be excused.

**5. Same; Partnership § 9— Evidence held for jury as to whether action for fraud was instituted within 3 years from date fraud was or should have been discovered.**

The evidence tended to show that brothers were partners, that upon the death of one of them the surviving partner failed to file an accounting with the clerk as required by statute, that upon confrontation by the son of the deceased partner he stated that there were no assets requiring settlement and that proceeds from sale of partnership lands had been lost in stock investments, it appeared that the deceased partner's interest in the partnership was inventoried at a very small sum, that upon the death of the other partner his interest in the partnership was also inventoried at a very small sum, that upon the death of his widow, some 27 years thereafter, her estate was inventoried at a very large sum, that neither of the partners nor the widow had any material income other than from the partnership, and that after the death of the first partner, the surviving partner sold the partnership assets and borrowed money on the partnership credit and put the proceeds in his wife's name, and that after the death of the second partner his widow continued to use and invest the partnership assets as her individual property. *Held:* Whether plaintiffs used due diligence to ascertain the facts constituting their cause of action for fraud is a question for the jury upon the evidence, and the entry of judgment of nonsuit in their action for an accounting instituted less than three years after the death of the widow is reversed.

APPEAL by plaintiffs from *Brock, S. J.,* September 1964 Civil Session of ANSON.

Action by the administratrix and heirs of Clifton C. Bennett (C. C. Bennett) for an accounting of partnership assets and the imposition of a constructive trust.

Defendant Anson Bank and Trust Company is sued (1) as executor of Rosalie Polk Bennett, widow of Purdie Richardson Bennett (P.

R. Bennett), surviving partner of C. C. Bennett, and (2) as administrator *c. t. a., d. b. n.* of the estate of P. R. Bennett. The widow and the son of C. C. Bennett, as his sole surviving heirs, instituted this action on September 9, 1963. The widow, as the "reappointed administratrix" of her husband's estate, made herself a party and adopted the complaint on September 29, 1964.

Plaintiffs allege: C. C. Bennett died intestate in 1936. His administratrix inventoried his estate at $3,000.00. C. C. Bennett had been a general, unlimited partner with his brother, P. R. Bennett, in the business of Bennett Brothers. P. R. Bennett died testate in 1944 without ever having filed any accounting of the partnership assets. His wife, Rosalie P. Bennett, was his sole beneficiary and the executrix of his estate, which she inventoried at $2,187.35. She likewise never filed any accounting for P. R. Bennett. She died testate in 1963, leaving an estate which defendant inventoried at $80,904.13. During his lifetime P. R. Bennett had no known income from any trade or profession other than the partnership, and during her lifetime Rosalie Bennett had no known income other than that provided by her husband. At her death the size of her estate was so disproportionate to that of the inventoried estate of her husband that "these plaintiffs allege fraud, corruption, or mistake on the part of Purdie Richardson Bennett and Rosalie Polk Bennett," *viz.*, P. R. Bennett during his lifetime diverted partnership assets to his wife, who, on numerous occasions, said: C. C. Bennett had no business knowledge and, like a child, signed where P. R. Bennett told him to sign. Before C. C. Bennett's death, P. R. Bennett placed money borrowed by the partnership in her private account, and she used it to buy stocks and bonds, without the knowledge of C. C. Bennett, who was told that the money had been lost in bad investments P. R. Bennett had made for the partnership.

Plaintiffs pray that they be given an accounting of partnership assets and "that a trust be impressed on the estate of Rosalie Polk Bennett until such time as an accounting of partnership assets can be made and distributed according to law."

Answering as executor of Rosalie P. Bennett, individually, defendant denies all material allegations of the complaint. Answering as administrator *c. t. a., d. b. n.* of P. R. Bennett, it denies all material allegations of the complaint and pleads, by way of further answer and defense, that plaintiffs' cause of action, if any, accrued more than 10 years before the commencement of this suit and is barred by the 10-, 7-, 6-, and 3-year statutes of limitation, specifically G.S. 1-47, G.S. 1-49, G.S. 1-50, and G.S. 1-52. It pleads, also, the laches of plaintiffs in that the administratrix of C. C. Bennett, his widow, appointed in 1936, closed his estate without ever requiring any accounting; that plain-

tiffs never filed any claim against the executrix of P. R. Bennett, appointed in 1944; that 28 years have elapsed since the death of C. C. Bennett, and 20 years since the death of P. R. Bennett.

Plaintiffs' evidence tends to show: C. C. Bennett died March 16, 1936. His gross estate as shown by the inheritance- and estate-tax inventory filed by his administratrix was $4,582.50. In this figure was included his interest in Bennett Brothers, estimated at $2,902.50. P. R. Bennett died January 19, 1944. The inventory and final account (one document) filed by his executrix showed real estate valued at $5,545.00, personalty at $3,709.27, and disbursements of $1,039.65. Before the signature the account contained this statement:

> "In filing this account said Rosalie Bennett, as individual and sole devisee, hereby receipts herself as Executrix for the above balance of $767.72, in addition to remaining ½ share and interest in the properties of Bennett Bros., and all personal properties and real estate herein shown or otherwise, in closing said estate."

Rosalie Bennett died January 10, 1963. Her executor inventoried her estate at $80,904.13. The inventory of Rosalie P. Bennett's estate shows real estate valued at $49,600.00; stocks, $30,920.00; cash, $184.13.

Plaintiffs' evidence further tends to show: When they were young men, C. C. Bennett and P. R. Bennett went into business as equal partners in a mercantile and farming operation. The partnership lasted until the death of C. C. Bennett, 46 years later. During all that time C. C. Bennett had no individual bank account. The two brothers and their wives together owned 7,000-10,000 acres of land "in different counties and states." Between 1932 and 1936 the brothers, with the joinder of their wives, conveyed, according to the testimony of the Register of Deeds, 7,782.87 acres. According to the summary of conveyances introduced in evidence as plaintiffs' Exhibit 13, the conveyances totaled 8,-284.27 acres, plus 5 lots, 2 "tracts" and "Bk 51-380," less an "exception" from a conveyance of 12.279 acres. Of this total, 2,782.7 acres, according to the Register of Deeds, were conveyed to the Bank of Wadesboro; according to Exhibit 13 — 3;284.09 acres, plus 2 lots and a "tract." Neither C. C. Bennett nor his wife ever received any funds from these sales. Mrs. C. C. Bennett testified: "These transfers of deeds to others were made back before my husband's death when they were liquidating the estates and paying their debts." Between 1939 and his death P. R. Bennett deposited a total of $37,109.87 in his own account in the Bank of Wadesboro. During that same period a total of $172,-957.25 was deposited to the credit of his wife, Rosalie P. Bennett. After the death of C. C. Bennett his widow and two sons signed deeds at the request of P. R. Bennett, but they never received any proceeds from such transfers.

In 1951, Rosalie P. Bennett became disabled and employed Thelma Leak "as a night servant." Mrs. Leak stayed with her until January 1963. About 1956 she took Mrs. Leak "into her confidence about her personal financial affairs." The latter testified that Mrs. C. C. Bennett had remarked to her "how pitiful" Mrs. Rosalie Bennett was; that when she repeated this comment to her, Rosalie Bennett said that was all Mrs. C. C. Bennett knew about it, that she had money, that "they thought she had to sell her diamond ring." Mrs. Leak further testified that Mrs. Rosalie Bennett told her they had spent $60,000.00 since she had been with her and "she had enough if she lived 100 years. . . .," that she had "$100,000 in stocks and bonds," that "Bennett Brothers borrowed $100,000 from the Bank and that's what they were living on now," "that Bennett Brothers was land poor . . . they got this money and paid the Bank back with land," that "they didn't need the money when they borrowed it to put the stock in . . . they were getting rid of the land . . . and Mr. P. R. Bennett bought stock and bonds with it in her name," and that is what they were living on now. Mrs. Bennett had a farm, which she operated through a tenant. She did not spend any money on entertaining and spent only what she had to for living expenses.

At the time of the death of C. C. Bennett, his son, plaintiff Clifton C. Bennett, was in law school. He testified:

"I consulted Professor McIntosh, who wrote the book on the Law of Partnerships, as I recall, and I confronted my uncle with the fact that he had not settled, and I am prepared to give you his reply. The reply was that there was nothing to settle, and since that time my assumption has been, until last year following the death of my aunt, his widow, that in fact there was no money to account for."

At the close of plaintiffs' evidence defendant's motion for judgment of nonsuit was allowed. Plaintiffs appeal from this ruling.

*Long, Ridge, Harris & Walker by George A. Long and Theron L. Caudle for plaintiffs appellants.*

*Taylor and McLendon by H. P. Taylor, Jr., for defendant appellee.*

SHARP, J. By this action instituted September 9, 1963, plaintiffs seek an accounting for a partnership which was dissolved March 16, 1936, by the death of a partner under whom they now claim. They further seek to trace partnership assets into the estate of the widow of the surviving partner and impress a trust upon such assets. Defendant, as administrator *c. t. a., d. b. n.* of the partner who survived in 1936, and

as executor of his widow, pleads the lapse of time — over 27 years — in bar of plaintiffs' right to an accounting. Specifically, defendant pleads G.S. 1-47, 10 years; G.S. 1-49, 7 years; G.S. 1-50, 6 years; and G.S. 1-52, 3 years. Upon defendant's plea of the statute of limitations the burden devolved upon plaintiffs to show that their action was not barred but was instituted within the time permitted by statute. *Jewell v. Price,* 264 N.C. 459, 142 S.E. 2d 1; *Fulp v. Fulp,* 264 N.C. 20, 140 S.E. 2d 708.

Before plaintiffs can obtain a money judgment against defendant upon a demand arising out of the partnership transactions of Bennett Brothers, there must be an accounting of partnership affairs and a balance struck. *Pugh v. Newbern,* 193 N.C. 258, 136 S.E. 707; *Baird v. Baird,* 21 N.C. 524, 539. Their first task, therefore, is to show that their right to an accounting has not been lost by lapse of time.

The partnership existing between the Bennett brothers created a fiduciary relationship imposing upon P. R. Bennett — the managing partner, according to plaintiffs' evidence — the duty to render to C. C. Bennett at any time upon his request "a full and actual account of partnership affairs." *Prentzas v. Prentzas,* 260 N.C. 101, 103, 131 S.E. 2d 678, 680; *accord, Pentecost v. Ray,* 249 N.C. 406, 106 S.E. 2d 467; *Casey v. Grantham,* 239 N.C. 121, 79 S.E. 2d 735. As between the partners themselves the statute would not begin to run on the cause of action for an accounting until one partner had notice of the other's termination of the partnership and his refusal to account. This is but an application of the rule that the statute of limitations does not commence to run against a trustee until he repudiates his trust. *Fulp v. Fulp, supra; Prentzas v. Prentzas, supra;* 40 Am. Jur., Partnership § 335 (1942).

In the absence of an express agreement to the contrary, every partnership is dissolved by the death of one of the partners. *In re Estate of Johnson,* 232 N.C. 59, 59 S.E. 2d 223; *Bank v. Hollingsworth,* 135 N.C. 556, 47 S.E. 618; 40 Am. Jur., Partnership § 286 (1942). This common-law rule is now codified as G.S. 59-61.4. Upon the death of C.C. Bennett, P. R. Bennett immediately stood "in the relation of trustee charged with the duty of faithful management and accounting to those entitled to the surplus of the deceased partner's interest after settling the debts of the partnership and winding up its affairs." *In re Estate of Johnson, supra* at 60, 59 S.E. 2d at 225; *accord, Walker v. Miller,* 139 N.C. 448, 52 S.E. 125. It was the duty of P. R. Bennett, as his surviving partner, to have filed with the Clerk of the Superior Court, within 12 months of the death of C. C. Bennett, a verified account stating his action as surviving partner, and, unless the Clerk had extended his time for good cause shown, to have come to a settlement with Mrs. C. C. Bennett, as administratrix of his deceased partner. N.

C. Code of 1935, § 3285 (now G.S. 59-82). The Clerk ·of the Superior Court did not extend the time for P. R. Bennett to account, and he died without ever having accounted. Clearly, therefore, on March 16, 1937, plaintiff administratrix had the right to sue P. R. Bennett for an accounting. *In re Johnson, supra;* see *Ewing v. Caldwell,* 243 N.C. 18, 89 S.E. 2d 774; *Sherrod v. Mayo,* 156 N.C. 144, 72 S.E. 216. Within 3 years thereafter, *nothing else appearing,* plaintiffs' action for an accounting would have been barred by G.S. 1-52(1). *Prentzas v. Prentzas, supra; Weisman v. Smith,* 59 N.C. 124; 40 Am. Jur., Partnership § 345 (1942). Plaintiffs contend, however, that here something else appears from their evidence: that in the lifetime of C. C. Bennett, his surviving partner, P. R. Bennett, the brother-in-law and uncle of plaintiffs, had fraudulently misappropriated partnership funds; that after C. C. Bennett's death he fraudulently concealed from plaintiffs the existence of their cause of action against him for his prior defalcations, which he had actively continued while making positive misrepresentations to plaintiffs that no such assets existed and that an accounting would be a futile thing.

In order to exercise their right to an accounting 26 years after i't accrued, plaintiffs must establish that they exercised it within 3 years of the time they discovered or ought by reasonable diligence *under the circumstances* to have discovered the fraud of P. R. and Rosalie P. Bennett. In 1937, plaintiffs knew of their *right* to require P. R. Bennett to account. If we take their evidence as true, as· we must in passing upon a motion for nonsuit, *Spinning Co. v. Trucking Co.,* 263 N.C. 807, 140 S.E. 2d 534, their failure to exercise this right was the result of P. R. Bennett's statement that the partnership had no assets — "that there was nothing to settle." If this statement was true — and plaintiffs say they believed it —, the institution of an action to require an accounting would have been a vain and an expensive gesture.

Under the circumstances here, plaintiffs' evidence must, in order to repel the bar of the statute, tend to establish (1) the falsity if P. R. Bennett's statement that there were no partnership assets; (2) that they reasonably relied upon the statement; and (3) that P. R. Bennett had misappropriated the assets and was actively concealing his breaches of trust. In other words, the facts which plaintiffs say caused them not to require the accounting are also the facts upon which they base their action to recover partnership assets. If P. R. Bennett misled plaintiffs so as to repel the bar of the statute, he had converted partnership assets. To prove the first is to prove the second.

Defendant contends that plaintiffs should have insisted on their legal right to an accounting in 1937; that, had they done so and had P. R. Bennett been guilty of the misappropriations with which plaintiffs now

charge him, such an accounting would have disclosed the misappropria-
tions; that in failing to require the accounting plaintiffs failed to exer-
cise reasonable diligence to discover the fraud they allege, and they are
therefore barred by G.S. 1-52(9) from any relief whatever.

Plaintiffs' evidence, should the jury accept it, would support but not
compel a finding that C. C. Bennett and P. R. Bennett were general
partners; that P. R. Bennett was the business manager of the partner-
ship, which was "land poor"; that, in order to dispose of land, the part-
nership borrowed $100,000 from the Bank of Wadesboro; that this
money was fraudulently misappropriated by P. R. Bennett and his wife,
both of whom led C. C. Bennett and his heirs to believe that it had
been lost by unfortunate investments; that 3,284.09 acres, plus two lots
and a "tract," were conveyed to the Bank of Wadesboro in 1935 for a
consideration, determined from the revenue stamps on the deeds, of
about $35,500; that from 1932 through 1936 the partnership also con-
veyed to other grantees 5,000.18 acres, plus 3 lots, a "tract," and "Bk
51-380," less an "exception" from a conveyance of 12.279 acres, for a
consideration, similarly determined, of about $44,000; that P. R. Ben-
nett bought stocks and bonds in his wife's name with the proceeds of
the loan from the Bank of Wadesboro; that, by 1956, Rosalie P. Ben-
nett had spent $60,000 in funds originating from the loan and that she
still had $100,000 in stocks and bonds derived from it.

The credibility of this evidence is not for the Court. Our task is to
determine (1) whether, taken as true, it constitutes more than a scin-
tilla of evidence of fraudulent misappropriation of partnership funds
by P. R. and Rosalie P. Bennett and of their active, fraudulent con-
cealment of these misappropriations from the heirs of C. C. Bennett;
and (2) whether the failure of P. R. Bennett to account in 1937, con-
sidered in connection with his relation to plaintiffs and his statement to
his nephew that there was nothing to account for, was sufficient to
alert plaintiffs and set the statute running.

> "It is generally held that where there is concealment of fraud
> or continuing fraud, the statute of limitations does not bar a suit
> for relief on account of it, and thereby permit the statute which
> was designed to prevent fraud to become an instrument to perpe-
> trate and perpetuate it. * * * The law applicable is well stated
> in 34 Amer. Jur., Limitation of Actions, par. 168, p. 135, as follows:
> 'Where a confidential relationship exists between the parties, fail-
> ure to discover the facts constituting fraud may be excused. In such
> a case, so long as the relationship continues unrepudiated, there is
> nothing to put the injured party on inquiry, and he cannot be said
> to have failed to use due diligence in detecting the fraud. . . .
> Similarly, an agent sued for fraud, cannot set up that the principal

should have suspected him.'" *Small v. Dorsett,* 223 N.C. 754, 761, 28 S.E. 2d 514, 518.

A failure to use such diligence as is ordinarily required of two persons transacting business with each other may be excused when there exists such a relation of trust and confidence between the parties that it is the duty, on the part of the one who committed the fraud and thereby induced the other to refrain from inquiry, to disclose to the other the truth. *Vail v. Vail,* 233 N.C. 109, 63 S.E. 2d 202; *accord, Gillett v. Wiley,* 126 Ill. 310, 9 Am. St. Rep. 587; 34 Am. Jur., Limitation of Actions § 168 (1941); Annot., 25 Am. St. Rep. 227. In *Lataillade v. Orena,* 91 Calif. 565, 27 Pac. 924, a case on all fours with ours, the plaintiff, on February 21, 1887, brought a suit to compel an accounting by his stepfather and guardian, who had handled his affairs since 1849. The California Code, like G.S. 1-52(9), provided that an action for relief on the grounds of fraud or mistake was not deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake. Counsel for the defendant contended that the action was not one for relief on the ground of fraud. The court said:

"It is true, the action was for an accounting, but the grievance complained of was that defendant knowingly received and held moneys in trust for plaintiff, and appropriated the same to his own use, and at all times fraudulently concealed from plaintiff the fact he had ever received or·held any such moneys or any money in which plaintiff had any interest. It seems to us, therefore, that the averments make a case of the class provided for in the section of the Code above cited." *Id.* at 577, 29 Pac. at 926.

Although plaintiffs' evidence is susceptible of inferences to the contrary, yet the jury could find from it that, in view of the confidential relationship existing between plaintiffs and P. R. Bennett, the former were not indiligent by reason of failing to require the latter to account within 3 years from March 16, 1937. We conclude, therefore, that plaintiffs were entitled to go to the jury on all the issues raised by the pleadings. These include, *inter alia,* the issue whether plaintiffs' right to an accounting is barred by the statute of limitations. Needless to say, defendant's evidence, not yet heard, might disclose a version entirely different from that of plaintiffs. The question of tracing trust funds will arise only if the jury, after hearing the evidence of both sides, establishes plaintiffs' right to recover a sum of money from defendant. See *Trust Co. v. Barrett,* 238 N.C. 579, 78 S.E. 2d 730; *McGurk v. Moore,* 234 N.C. 248, 67 S.E. 2d 53.

The judgment dismissing the action as of nonsuit is
Reversed.