JOHN T. ROPER v. EDWARD H. THOMAS, JESSE M. WALLER, EDWARDS & WARREN, PROFESSIONAL ASSOCIATION, AND JOSEPH WARREN, III

No. 8226SC80

(Filed 21 December 1982)

1. **Rules of Civil Procedure § 15.1— amendments to complaint—no abuse of discretion by trial judge**

    The trial judge did not abuse his discretion in an action by a limited partner against the general partners by allowing plaintiff to amend his complaint since (1) none of the amendments could have surprised the defendants, (2) they referred to and were a part of matters that had appeared before in the pleadings, previous amendments and in a deposition of one of the defendants, and (3) the defendants showed no prejudice as a result of the amendments being offered or allowed. G.S. 1A-1, Rules 15(a) and 15(b).

2. **Rules of Civil Procedure § 15— amendments to complaint—relation back—not barred by statute of limitations**

    In an action by a limited partner against the general partners to recover the amount of his investments in a limited partnership, the trial court did not err in finding plaintiff's amendments to his complaint related back and were not barred by the statute of limitations. The original complaint generally asserted breach of the partnership agreement and no new, entirely different cause of action was interposed by the amendments. The theory of breach of the partnership agreement was simply expanded to include with specificity another breach, and defendants were on notice of the theory of the suit from the date of filing. G.S. 1A-1, Rule 15(c).

3. **Partnership § 6— action by limited partner against general partners not premature**

    An action by a limited partner against the general partners to recover the amount of his investments in a limited partnership was not premature even though plaintiff had not demanded a formal accounting of partnership affairs pursuant to G.S. 59-10 since receiving a formal accounting would have been fruitless. The partnership was a single purpose partnership project and all of its assets were extinguished by a foreclosure.

4. **Partnership § 3— breach of obligation under partnership agreement—refusal to apply "business judgment" test—no error**

In an action by a limited partner against the general partners of a limited partnership, the trial court did not err in refusing to apply the "business judgment" test in evaluating the defendants' actions where defendants breached their obligations under the partnership agreement and pursued a course of conduct that an ordinary person may reasonably have foreseen as injurious to others.

5. **Partnership § 3— duties created by limited partnership agreement on part of general partners**

A limited partnership agreement created a duty on the part of the general partners to (1) obtain permanent financing, (2) pay cost overruns before permanent financing was obtained, and (3) pay the construction loan.

6. **Partnership § 3— defendant's negligence as proximate cause of plaintiff's injury—sufficiency of evidence**

In an action by a limited partner against the general partners to recover the amount of his investments in a limited partnership, the trial court did not err in finding plaintiff had established that defendants' negligence, and not a myriad of outside circumstances, was the cause of plaintiff's injury or loss.

7. **Partnership § 6— refusal to certify witnesses as experts in troubled real estate ventures—proper**

In an action by a limited partner against the general partners, the trial judge did not err in refusing to certify defendants' witnesses as experts in troubled real estate ventures and in apartment project development since their testimony would have dealt substantially with defendants' actions after their having negligently started the project without permanent or any other type of long term financing, and efforts to salvage the project already in progress were immaterial.

8. **Judges § 5— denial of motion for recusal proper**

A trial judge properly found that no grounds existed for recusal of another trial judge who called the attorneys for both plaintiff and defendants into his chambers and advised them that, based on the testimony before him, the defendants were absolutely liable to the plaintiff and inquired about settlement possibilities.

APPEAL by defendants Edward H. Thomas and Jesse M. Waller from *Burroughs, Judge.* Judgment entered 2 June 1981 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 15 November 1982.

This is an action by a limited partner against the general partners to recover the amount of his investments in a limited partnership formed under G.S. 59-2 for the purpose of acquiring lands and constructing an apartment complex thereon in Colum-

bia, South Carolina. Plaintiff was allowed to amend his complaint on several occasions over defendants' objections. Defendants' motions to dismiss made at the end of plaintiff's evidence and at the end of all the evidence were dismissed. The trial judge heard the evidence, made findings of fact and conclusions of law, and entered judgment for the plaintiff for the loss sustained by him in the partnership. Defendants appealed.

*Boyle, Alexander, Hord & Smith, by Robert C. Hord, Jr., for plaintiff-appellee.*

*Parker Whedon for defendant-appellants.*

HILL, Judge.

In November, 1972, the plaintiff and 21 other people became limited partners with the defendants, Edward H. Thomas and Jesse M. Waller. The parties executed a limited partnership agreement (hereinafter referred to as "LPA"). The partnership was formed to provide for the construction and operation of a 208-unit apartment complex to be known as Fountain Lake Apartments located in Columbia, South Carolina. Prior to the execution of the LPA, all of the partners were furnished with a Private Placement Memorandum (hereinafter referred to as "PPM") outlining the proposed project and its potential risks, profits, and tax consequences. Plaintiff invested a total of $31,200, purchasing two units in the partnership.

Construction of the project began in January, 1973, financed by funds from a construction loan made by Cameron Brown Investment Group. The general contractor on the project was Lone Star Builders of South Carolina, Inc., in which the general partners were principal stockholders. This fact was not disclosed to the limited partners in the PPM or LPA, nor was a marketing needs survey conducted for the City of Columbia.

The construction project encountered difficulties from the beginning, including weather, soil problems, withdrawal of subcontractors, escalating costs and interest rates. When completed, the project had a cost overrun, which the general partners were obligated to pay and did not. A soft rental market added to the woes, and at no time was the project more than 51 per cent occupied. Rental income was approximately $18,000 less per month

than what was required to pay the monthly operating expenses plus principal and interest payments on the projected permanent loan. The general partners were unable to obtain permanent financing, which they were obligated to do under the PPM and LPA. Although the construction loan was extended six months by the lender, the loan was foreclosed subsequently, and plaintiff lost his total investment of $31,200. (He was, however, able to recoup a part of the loss as a tax benefit. By the same token, he must add back as income any sums recouped in this lawsuit.) Further facts will be set forth in the body of the opinion.

[1] Defendants bring forth eight assignments of error. By their first assignment, they contend the trial judge erred in granting plaintiff leave to amend his complaint both before trial and during trial and in refusing to allow defendants to file one defense in an amended answer.

The original complaint was filed 24 March 1977. In March 1979, plaintiff, having taken the deposition of the defendant Thomas, moved the court for permission to amend his complaint to assert negligence by defendants in performing duties imposed on them as general partners. The trial judge on 19 April 1979 entered an order allowing the motion to amend. Defendants answered the amendments allowed by the court and moved to amend their answer. This motion was allowed by the trial judge. A subsequent motion to amend the answer, however, apparently was denied.

On 27 May 1981, plaintiff further moved the court for an order allowing him to amend his complaint to show defendants had not complied with the terms of the partnership agreement obligating them to pay excess construction costs. This motion was made in order to conform to the evidence which plaintiff would present arising out of defendant Thomas's deposition. Plaintiff alleged such amendment would constitute no surprise to defendants.

On 1 June 1981, plaintiff further moved to amend his complaint by asserting a misuse by general partners of the funds advanced by the limited partners on projects unrelated to the purposes of the partnership. Plaintiff alleged such matters were not new and would tend to clarify the pleadings already filed.

The trial judge in his findings of fact in the judgment entered 2 June 1981 allowed the motions and ascertained they related back to matters already before the court.

It is fundamental to the concepts embodied in Rules 15(a) and 15(b) of the North Carolina Rules of Civil Procedure that amendments to pleadings and relation back of such amendments should be liberal in their allowance and application. The rule, in fact, encourages liberal amendment of pleadings. *McGinnis v. Robinson,* 43 N.C. App. 1, 258 S.E. 2d 84 (1979). Discretion in the trial judge is not unlimited, however, and the amendment should not be granted when the opposing party would be prejudiced. N.C. Rules Civ. Pro. 15(a) and 15(b); *Auman v. Easter,* 36 N.C. App. 551, 244 S.E. 2d 728, *disc. rev. denied,* 295 N.C. 548, 248 S.E. 2d 725 (1978).

We find no error in this assignment. None of the amendments brought out any new material or in any way could have surprised the defendants. They referred to and were a part of matters that had appeared before in the pleadings, previous amendments, and in the deposition of the defendant Thomas. The defendants showed no prejudice as a result of the amendments being offered or allowed. Neither did defendants request a continuance of the case because of the substance of the amendments. The conclusion of the trial judge that "[i]n the interest of justice and in order to allow a full hearing of the cause on its merits, the amendments were allowed" is amply supported by the findings of fact and the record.

[2] Defendants next argue plaintiff's amendments of 27 May 1981 and June 1, 1981 do not relate back, and thus any cause of action thereunder is barred by the statute of limitations.

Under Rule 15(c) of the North Carolina Rules of Civil Procedure, claims asserted in amended pleadings are generally deemed to relate back to the time of interposing of the original pleadings, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences to be proved pursuant to the amended pleading.

In the case *sub judice,* defendants contend plaintiff has sought by his amendments to introduce new claims for transactions of which he had been aware since 1973, and during trial to assert a new theory of the case based on negligence. Defendants

further contend that any claims plaintiff may have based on failure to pay cost overruns or the failure to obtain permanent financing should have been made at the commencement of the suit, because there is a question whether the general partners were under an obligation to pay the cost overruns or to obtain permanent financing, two theories of liability on which plaintiff had not previously relied. We do not agree.

The original complaint generally asserted breach of the partnership agreement, and no new, entirely different cause of action has been interposed by the amendments. The amendments speak specifically to the partnership agreement and the obligations of the general partners under the agreement. Therefore, the amendments relate back to the time of filing the original complaint. The theory of breach of the partnership agreement was simply expanded to include with specificity another breach, and defendants were on notice of the theory of the suit from the date of filing.

Limited partners are sometimes called silent partners. Because their duties are generally limited in the partnership agreement, they cannot be held to know all that a general partner knows. Hence, additional knowledge may come to the attention of a limited partner later than it comes to a general partner. In this case, knowledge of the breach of the partnership agreement by the general partners in failing to obtain permanent financing was pleaded shortly after plaintiff learned of it through the Thomas deposition. *Condominium Assoc. v. Scholz Co.*, 47 N.C. App. 518, 268 S.E. 2d 12, *disc. rev. denied*, 301 N.C. 527, 273 S.E. 2d 454 (1980), offers guidance. In that case, plaintiff sued an architect and general contractor to recover damages resulting from an alleged substandard underground water system. In its original complaint, plaintiff asserted that the architect failed to supervise and inspect the construction and thus negligently allowed the substandard piping to be installed. Later, plaintiff sought to amend its complaint to assert that the architect had negligently designed the piping system. This Court deemed such an amendment to be a proper one, as the original pleading gave sufficient notice of the complained of occurrence. In this case, the original complaint alleged a breach of contract of a partnership agreement with respect to the building of an apartment project for a limited partnership and contained general allegations about the duties of the general partners. The amendments sought by plaintiff and al-

lowed by the court met the notice test of the Rule since they had to do with the partners' breach of the obligations imposed on them under the LPA. Furthermore, the amendments tended to clarify that which was before the court and to conform to the evidence. We overrule this assignment.

[3] By their next assignment, defendants raise the question whether plaintiff's suit is premature, arguing the trial court erred in refusing to find plaintiff had no standing to initiate suit for individual recovery at this time. We do not agree.

As a general rule, one partner cannot sue another partner at law until there has been a complete settlement of the partnership affairs and a balance struck. *Bennett v. Trust Co.*, 265 N.C. 148, 143 S.E. 2d 312 (1965). Defendants point out that limited partnerships are creatures of statute, limiting the rights as well as liabilities of limited partners. Among these is the right to demand a formal account of partnership affairs. G.S. 59-10. Defendants point out that plaintiff never attempted to exercise this right.

The general rule, as cited by defendants, is correct, but there are well recognized exceptions. Justice Brogden, in *Pugh v. Newbern*, 193 N.C. 258, 261, 136 S.E. 707, 708-709 (1927), noted the exceptions:

A partner may maintain an action at law against his copartner upon claims growing out of the following state of facts:

\*    \*    \*    \*    \*    \*

(5) Where the partnership is terminated, all debts paid, and the partnership affairs otherwise adjusted with nothing remaining to be done but to pay over the amounts due by one to the other, such amount involving no complicated reckoning.

(6) Where the partnership is for a single venture or special purpose which has been accomplished, and nothing remains to be done except to pay over the claimant's share.

(7) When the joint property has been wrongfully destroyed or converted.

Demanding and waiting until plaintiff received a formal accounting would have been fruitless. This was a single purpose

partnership project. All of its assets were extinguished by the foreclosure. Plaintiff had no further obligations and no rights in any partnership property. The case falls within the guidelines set out above, and the ruling of the trial judge is affirmed in this assignment.

[4] By their fourth assignment of error, defendants contend the trial judge erred in refusing to apply the "business judgment" test in evaluating the defendant's actions. We find no merit in this assignment.

The court made the following findings of fact and conclusions of law, *inter alia*:

> (10) FACT: The defendants were experienced in developing, building, managing, acting as general partners, and obtaining financing for apartment projects for limited partnerships; the defendants prior to beginning the project, had no contingency plan for an adverse change in construction, financial or market conditions on the limited partnership project; the defendants developed no contingency plan as the project began to falter; instead the defendants continued on to complete 100% of the project as originally planned; the project was begun in 1973 and was ultimately foreclosed in the Fall of 1976.

> CONCLUSION OF LAW: Such acts of the defendants were acts of negligence and such negligence was a proximate cause of the plaintiff's damage.

> (11) FACT: Adverse market, construction, financing and other factors arose during the limited partnership project.

> CONCLUSION OF LAW: Such adverse factors were not legally sufficient to relieve the defendants of their obligations under the PPM and LPA; the law cannot protect the defendants from a bad bargain; the bargain was legal and binding on the parties; any failure of the project was a proximate result of the defendants' failure to meet their financial obligations to the plaintiff.

> (12) FACT: Both Mr. Thomas and Mr. Waller were general partners in the Fountain Lake Limited Partnership Agreement.

CONCLUSION OF LAW: As general partners, Messrs. Thomas and Waller are jointly and severally liable for any damage the plaintiff may have suffered as a proximate result of the defendants' breach of the PPM and LPA.

Defendants contend a general partner may be likened to a corporate director who may be personally liable for gross neglect of his duties, mismanagement, fraud and deceit resulting in loss to a third person, but not for error of judgment made in good faith. *Milling Co., Inc. v. Sutton,* 9 N.C. App. 181, 175 S.E. 2d 746 (1970). Defendants' arguments are meritless. The judge, recognizing the defendants as general partners in the project, concluded defendants were jointly and severally liable for such damages the plaintiff may have suffered as a proximate result of defendants' breach of the PPM and LPA. In effect, the judge treated the matter as a negligent breach of contractual obligation. Defendants were experienced in developing, building, managing, acting as general partners, and obtaining financing for apartment projects for limited partnerships. The record reveals that no permanent plan for financing existed before or during construction, but the general partners were aware that the construction loan stipulated a date by which permanent financing had to be obtained. Of the eighteen apartment projects built by defendants, this was the first one they had begun constructing without permanent financing arranged in advance. The defendant Thomas acknowledged the riskiness of commencing a construction project without first having a commitment for permanent financing and indicated he did not talk about the potential risks to the limited partners. Defendants admitted they were obligated to manage the project and obtain financing for construction as well as the permanent loan, and that they failed to do so. It is apparent defendants essentially had no plan except to hang on in the face of escalating costs and cost overruns.

Defendants breached their obligations under the partnership agreement. They pursued a course of conduct that an ordinary person may reasonably have foreseen as injurious to others. They were negligent in performance of the contract with the plaintiff. *Insurance Co. v. Sprinkler Co.,* 266 N.C. 134, 146 S.E. 2d 53 (1966). We find no error in this assignment.

[5] By their next assignment of error, defendants contend the LPA created no absolute duty on the part of the general partners

to (1) obtain permanent financing, (2) pay cost overruns before permanent financing was obtained, or (3) repay the construction loan. We do not agree.

The trial judge found as a fact that such duties were imposed, and failure by the general partners to perform these duties was a proximate cause of the failure of the project and a material breach of the LPA. In the body of the PPM under the section entitled "Partnership Capital," a paragraph designated "Investment of General Partners" says:

> The General Partners agree to make capital contributions to pay any construction costs in excess of the contributions of the Limited Partners and the first mortgage proceeds obtained. However, no excess construction costs are anticipated.

In paragraph 7 of the LPA entitled "Capital Contributions of the General Partners," the following language appears:

> The General Partners agree to construct on behalf of the Limited Partnership the Fountain Lake Apartments for a cost not to exceed $358,800 in excess of the permanent (first mortgage) loan on such apartments, and further agree to contribute to the capital of the Limited Partnership any costs in excess of such difference.

The PPM under the section entitled "Liabilities of General Partners" provides:

> The General Partners will be personally liable for repayment of the construction loan obtained for the purpose of building the Fountain Lake Apartments. Permanent financing will be arranged so that neither the General Partners nor the Limited Partners will be personally liable for repayment of the indebtedness. The lender will look solely to the assets of the Partnership for satisfaction of its loan.

Defendants contend there is nothing in the agreement that requires the general partners to obtain permanent financing. Rather, they point to the section of the LPA that provides:

> The purposes of this Limited Partnership are:
>
> (c) To arrange construction and permanent financing on the most favorable terms available.

Defendants contend that under this provision they had the duty to attempt to obtain financing, but they certainly did not guarantee to do so.

According to the testimony of defendant Thomas, the general partners admit they were to manage the project and obtain financing for the project—both permanent and construction loan financing. Another witness testified that Mr. Thomas admitted the general partners were responsible for getting the permanent loan and were also responsible for payment of the excess cost overruns referred to previously.

The word "will" is a mandatory word imposing a definite obligation. The general partners by their actions in the management of the project, in addition to the inactivity of the limited partners, and the testimony of the defendant Thomas provide substantial evidence of the general partners' duty to obtain permanent financing.

The language by which the general partners agreed to contribute to the capital of the limited partnership any costs in excess of the first mortgage is clear, as is their obligation to pay any construction costs in excess of the contributions of the limited partners. Defendants cannot hide behind their failure to obtain permanent financing for the project. When a permanent loan was not obtained, the construction loan became the first mortgage permanent loan. Their failure to obtain permanent financing before construction put defendants on notice that they assumed the risks of failing to obtain financing later. The assignment is overruled.

It is elementary that in a negligence action the burden is on the plaintiff to establish that defendant's negligence was the proximate cause of plaintiff's injury or loss. *Rappaport v. Days Inn*, 296 N.C. 382, 250 S.E. 2d 245 (1979). In contract actions, plaintiff also has the burden of establishing the requisite causal connection. *Lane v. R.R.*, 192 N.C. 287, 134 S.E. 855 (1926).

[6] Defendants argue that plaintiff has presented insufficient evidence of the causal connection. Defendants argue that a myriad of circumstances was the cause of the project's failure, and the purported negligence of the defendants was not among them. Defendants' arguments are fruitless. Plaintiff contends

defendants were negligent in fulfilling contractual obligations to construct the project — obligations clearly assumed by defendants in the LPA and PPM. Defendants negligently failed to meet their obligation. They failed to arrange for permanent financing before construction and failed to pay the cost overruns. They also failed to pay off the construction loan because they had not arranged for permanent financing. These were separate and distinct acts to be done by defendants as a part of construction. Because they were not done, the construction mortgage was foreclosed, and the projects lost. Expert testimony to establish this causal relationship is not necessary. The fact that the project sustained additional costs of construction is a risk of the general partners. The fact that the project did not rent substantially occurred after the breach by defendants.

The award by the trial judge to plaintiff of his initial investment plus interest was the natural and probable result of the breaches by the defendants. We find no merit in defendants' contention.

[7] Nor do we find error in the judge's refusal to certify defendants' witnesses as experts in troubled real estate ventures and in apartment project development and his exclusion of their testimony. The testimony of these witnesses would have shown the actions of the defendants were consistent with standard business practices at the time, but that the project would have failed even if the defendants had obtained the permanent financing; that the defendants did everything possible to salvage the project. Such testimony would have dealt substantially with defendants' actions after their negligently having started the project without permanent or any other type of long term financing. Efforts to salvage the project already in distress are immaterial, as is testimony that the project would have failed even if completed.

[8] Plaintiff called as an adverse witness defendant Edward H. Thomas. At the conclusion of testimony by Thomas, the trial judge called the attorneys for both plaintiff and defendants into his chambers and advised them that based on the testimony before him the defendants were absolutely liable to the plaintiff, regardless of further evidence, and inquired about settlement possibilities. Nothing in the record indicates the judge could not

proceed with the trial fairly and impartially. On the following day, the defendants filed a motion for order of recusal. Immediately thereafter, the matter was heard by the Honorable Frank W. Snepp, Jr., who found facts, and concluded that no grounds existed for recusal and denied the motion.

Plaintiff's brief sets forth additional facts tending to show the trial judge thought settlement of the case would be in order. These statements are not a part of the record and will not be considered by us.

It is apparent from the order of Judge Snepp that the conference conducted by Judge Burroughs was held for the purpose of exploring settlement possibilities, a function to be commended to all trial judges in civil cases. The conference was not held in the presence of the jury. Only the judge and the attorneys—all officers of the court—were present. Neither the record nor the order details the conversation between Judge Burroughs and the attorneys. Nevertheless, we hold Judge Snepp did not abuse his discretion by his order dismissing the motion for recusal, finding that no grounds existed for recusal and that defendants' motion for mistrial should be heard by the presiding judge.

In the trial of the case we find the defendants received a fair trial, free from prejudicial error. The judgment of the court is

Affirmed.

Judges VAUGHN and ARNOLD concur.