## CIRCUIT COURT OF FAIRFAX COUNTY

George Tsui

v.

Germaine W. Sobral

July 26, 1996

Case No. (Chancery) 138739

BY JUDGE ROBERT W. WOOLDRIDGE, JR.

This matter came for trial before the Court on June 6, 1996. At the conclusion of trial, I took the matter under advisement. For the reasons stated below, judgment is now rendered in favor of the defendant, and the Motion for Judgment is dismissed.

I make the following findings of fact. Between September, 1988, and February, 1990, the plaintiff, George Tsui, invested $151,000.00 with Antonio Sobral (the defendant's husband) in exchange for a guaranteed rate of return on his money. By August, 1990, Antonio Sobral had repaid Tsui $75,000.00 of the investment principal, leaving $76,000.00 of the principal unpaid. On August 31, 1990, Antonio Sobral signed a promissory note payable to Tsui in the amount of $76,000.00 in principal, plus interest. Between August, 1990, and July, 1991, $10,000.00 more in principal was repaid by Antonio Sobral to Tsui. On July 11, 1991, Antonio Sobral executed an amendment to the August 31, 1990, promissory note reflecting that partial repayment, extending the outstanding obligation for an additional two years, and setting the total obligation at $95,510.00 in principal and accrued interest. Carlos Sobral, Antonio Sobral's brother, personally guaranteed the note amendment and extension. No further payments were made on the note, and Tsui brought a separate suit on the amendment to the note against Antonio and Carlos Sobral. Tsui eventually received $16,000.00 more from Antonio Sobral under restitution ordered by the

State Corporation Commission of Virginia and $12,000.00 from Carlos Sobral. Otherwise, the obligations remain unpaid.

In September, 1988, Antonio Sobral opened a checking account with Ameribanc in his name only. Between September, 1988, and February, 1990, $151,000.00 was deposited into that account. The defendant, Germaine W. Sobral, was added as a signatory on the account between March 3 and April 5, 1989. The defendant continued to be a signatory on the account through all times relevant to this proceeding. Between October, 1988, and October, 1989, eight checks were drawn on the Ameribanc account totaling $42,750.00 and made payable directly to the defendant. All but one of those checks (for $750.00) were deposited into the defendant's law office account. The $750.00 check was deposited into a joint checking account of the defendant and Antonio Sobral. Between 1988 and October, 1989, three checks totaling $4,100.00 were drawn on the Ameribanc account and made payable to Antonio Sobral or to cash but were deposited into the defendant's law office account. Between October, 1988, and August, 1989, seven checks totaling $11,900.00 were drawn on the Ameribanc account payable to Antonio Sobral or to cash and deposited into the joint personal checking account of the defendant and Antonio Sobral. Between October, 1988, and December, 1989, four checks totaling $13,428.00 were drawn on the Ameribanc account and made payable directly to creditors of the defendant in payment of her obligations to them. Between January and August, 1989, five checks totaling $30,300.00 were drawn on the Ameribanc account and deposited into a personal account of Antonio Sobral at Meritor Bank. Between 1988 and March, 1990, nine checks totaling $18,150.00 were drawn on the Meritor account and made payable to the defendant.

Based upon all the testimony before me, I find that $120,000.00 of the funds deposited into the Ameribanc account between September, 1988, and February, 1990, is money advanced by Tsui to Antonio Sobral. I further find that the defendant obtained the direct benefit of $91,278.00 of those funds as the result of payments out of the Ameribanc account directly to her, deposited into her law office account, deposited into Antonio Sobral's and the defendant's joint personal checking account, and paid to her creditors. I was unpersuaded by defendant's testimony and argument that such monies were loans from her husband that she repaid, and therefore, she was not unjustly enriched.

The Bill of Complaint in this matter was filed on March 27, 1995. Count I of the Bill of Complaint sought recovery on the theory of unjust

enrichment or constructive trust. Count II of the Bill of Complaint sought recovery on the theory of fraud. An Amended Bill of Complaint was filed July 2, 1995. The Amended Bill of Complaint (upon which this matter was tried) seeks recovery on the same theories. In addition to denying the merits to the claims, the defendant relies upon the affirmative defense of the statute of limitations.

In Count I of the Amended Bill of Complaint, Tsui seeks recovery against the defendant on the theory of unjust enrichment. Where a defendant possesses money which, in justice and fairness, she ought to refund, the law conclusively presumes that she has promised to do so. *Robinson v. Robinson*, 137 Va. 378, 381 (1923), citing 2 *Greenleaf on Evidence*, 15th ed., § 102. The law allows such a claim based on a theory of unjust enrichment. *Belcher v. Kirkwood*, 238 Va. 430, 432 (1989). Such an action lies for money paid by mistake; failure of consideration; money obtained through expressed or implied imposition; extortion; oppression; or the taking of undue advantage. *Robinson*, 137 Va. at 381, *citing Moses v. McFerland*, 2 Burrow 1005, 1012 (1760).

I find in this case that the defendant was unjustly enriched at the expense of Tsui in the amount of $67,500.00. There remains the issue of whether such recovery is barred by the statute of limitations.

The presumption in law of a promise to return unjustly obtained monies creates an implied contract. As to the statute of limitations, equity follows the law. If a legal demand is asserted in equity which is barred by statute, it is equally barred in equity. *Belcher*, 238 Va. at 433, *citing Sandford v. Sims*, 192 Va. 644, 649 (1951). Like a contract implied in fact, a contract implied in law (as here) is subject to a three-year statute of limitations. *See Belcher*, 238 Va. at 433. Where no repayment date is provided under the implied contract, the monies are deemed payable on demand. *Belcher*, 238 Va. at 433. Because the original Bill of Complaint in this suit was filed on March 27, 1995, recovery cannot be had for any unjust enrichment arising prior to March 27, 1992. All Tsui's payments to Antonio Sobral were between September, 1988, and January, 1990. The flow of money to the benefit of the defendant occurred between October, 1988, and March, 1990. To survive a statute of limitations defense, Tsui's suit must have been brought no later than three years from those dates. It was not, and therefore, recovery under Count I is barred by the statute of limitations.

Tsui advances a variety of arguments in an effort to defeat the statute of limitation bar. He asserts that certain letters (Plaintiff's Exhibit 8) from Antonio Sobral to Tsui between September, 1988, and August, 1993, ad-

vising Tsui of the status of his investment account, create an express trust for which there is no statute of limitations. I find that at least as to defendant, they create no express trust. Alternatively, Tsui asserts that the letters create a constructive trust or constitute a written contract to which a five-year statute of limitations applies. I find that there was no constructive trust or written contract between Tsui and the defendant. Further, Tsui asserts that the statute of limitations on his unjust enrichment claim did not begin to run until July 1, 1993, when the amended and extended promissory note was breached by non-payment. For the reasons stated earlier in this letter, I find that the statute of limitations began to run at such time as the defendant unjustly benefitted from Tsui's money and demand by Tsui on the defendant could have been made, or no later than March, 1990. Finally, Tsui asserts that the statute of limitations should not begin to run until he reasonably knew of the unjust enrichment of the defendant. Tsui asserts that he did not become aware of this until discovery in his separate suit against Antonio Sobral was provided in August 1994. This argument fails because the statute of limitations for unjust enrichment does not begin to run when a party "knew or should have known" of the unjust enrichment. Rather, it begins to run at the time the unjust enrichment occurred.

In Count II, Tsui claims compensatory and punitive damages for fraud. I find the evidence insufficient of any fraud or misrepresentation to Tsui by the defendant and, therefore, find in favor of the defendant on Count II.