UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

RMS TECHNOLOGY, INCORPORATED,
              *Plaintiff-Appellant,*

v.

TDY INDUSTRIES, INCORPORATED, t/a
Teledyne Industries, Incorporated;
TELEDYNE TECHNOLOGIES,
INCORPORATED; TELEDYNE BROWN
ENGINEERING, INCORPORATED,
              *Defendants-Appellees.*

No. 02-1299

Appeal from the United States District Court
for the Eastern District of Virginia, at Newport News.
Raymond A. Jackson, District Judge.
(CA-01-22-4)

Argued: December 5, 2002

Decided: February 6, 2003

Before WILKINSON, Chief Judge, and LUTTIG and
MICHAEL, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** William Anthony Lascara, PENDER & COWARD, P.C.,
Virginia Beach, Virginia, for Appellant. Michael Alexander Hopkins,
MCKENNA, LONG & ALDRIDGE, L.L.P., Washington, D.C., for

Appellees. **ON BRIEF:** Raymond B. Biagini, MCKENNA, LONG & ALDRIDGE, L.L.P., Washington, D.C., for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Plaintiff RMS Technology brings this appeal alleging that the district court improperly dismissed its complaint against defendants Teledyne Industries, Inc., Teledyne Technologies Inc., and Teledyne Brown Engineering, Inc. (collectively "Teledyne") on summary judgment. The district court properly applied both the Uniform Commercial Code and Virginia procedural law to these claims to find that the suit was filed outside of the applicable limitations period. We thus affirm the dismissal of RMS's case.

I.

Lockheed Martin, which is not a party to this suit, contracted with Teledyne on May 2, 1995, to fabricate, test, and deliver armor moving target carrier ("AMTC") systems. The AMTC systems were part of a Remote Target System ("RETS") requested by the U.S. government to provide realistic combat training for the armed services. On July 7, 1995, Teledyne executed a contract ("Purchase Order 456258") with RMS Technology under which RMS agreed to manufacture three first article and thirty-seven subsequent AMTC systems in its facilities in Newport News, Virginia. This assembly was to be completed between December 30, 1995, and July 30, 1996.

Contract negotiations between Teledyne and RMS consisted of an exchange of letters regarding price estimates and each company's responsibility under the purchase order. In its initial response to Teledyne's request for quotes, RMS advised Teledyne that the price

would vary based on what portion of the materials Teledyne supplied for the project. RMS also informed Teledyne that RMS was currently producing AMTC systems for the U.S. military, that RMS would continue production until December 1995, and that RMS thought any remaining first article tests on the AMTC systems might be waived because of its experience manufacturing such systems. Ultimately, the parties agreed that Teledyne would supply most of the raw materials for the first two years of production and that RMS would supply primer, paint, cleaning chemicals, consumables and hydraulic fluid.

The contract provided that all work was to be completed in "accordance with the total technical and delivery requirements and terms and conditions as specified in the reference purchase order." It also required RMS to represent and warrant "that the goods and services furnished" under the contract "be merchantable and fit for the particular purpose intended [and] free of defects in design workmanship and materials." The contract further provided that "[t]itle and risk of loss to goods shall pass to Buyer upon receipt at Buyer's designated destination." Lastly, the contract contained a choice of law provision, stating that "[t]he rights and obligations of the parties hereto shall be governed by the law of the State of Alabama."

On February 22, 1996, RMS advised Teledyne that it was "compelled to stop work on contract number 456258 due to a lack of funds." RMS also informed Teledyne that it had laid off all of its employees. Following receipt of RMS's correspondence, Teledyne sent a letter to RMS on February 29, 1996, alleging default by RMS and terminating the contract.

On April 26, 1996, RMS submitted a claim for $176,435.56 to Teledyne for out of scope work done in connection with the contract. Teledyne responded by letter, informing RMS that it would submit all valid and substantiated claims to Lockheed Martin as part of its settlement proposal. In November, 1996, Teledyne sent this proposal to Lockheed Martin, including only the amounts that Teledyne had actually paid to RMS. Teledyne also informed Lockheed that RMS had claimed additional costs, but that such costs were not included in the proposal because they were not yet substantiated. On December 20, 1996, Teledyne entered into a settlement agreement with Lockheed

Martin which did not include any sums for the allegedly out of scope work.

On February 23, 2001, RMS filed a five count complaint against Teledyne in the United States District Court for the Eastern District of Virginia for $282,788.78, plus pre-judgment interest and costs. RMS alleged breach of contract (Count I), quantum meruit (Count II), impossibility and commercial impracticality of performance of the contract (Count III), unjust enrichment (Count IV), and constructive trust (Count V). Teledyne filed a motion for summary judgment on April 26, 2001, arguing that each count of RMS's complaint had been filed outside the applicable statute of limitations period.

Specifically, Teledyne contended that the contract was for the sale of goods and was therefore governed by the Uniform Commercial Code (UCC). Teledyne also argued that the equitable counts of the complaint were barred by Virginia's three year statute of limitations for unwritten contracts. The district court agreed and granted Teledyne's motion for summary judgment on October 22, 2001. RMS appeals this ruling.

## II.

Summary judgment is appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The district court found that there was no genuine issue of fact in this case as to which statutes of limitations applied. We agree.

## A.

RMS first contends that the district court erred by applying the UCC's four year statute of limitations to Counts I and III of its complaint. Whether a particular transaction is governed by the UCC depends on the predominant purpose of the transaction, however. *Princess Cruises, Inc. v. Gen. Elec. Co.*, 143 F.3d 828, 832-33 (4th Cir. 1998). Where, as here, a transaction is primarily for the sale of goods, the terms of the UCC govern claims arising from that transac-

tion. *Id.* RMS argues that its duty under the contract was only to provide the necessary labor, processes and facilities to fabricate the AMTC systems with materials provided by Teledyne. The contract price, then, was based solely on the cost of the man-hours needed to complete the contract and not on the cost of the AMTC systems themselves. Therefore, RMS contends that the district court erred in finding that RMS did not create a genuine issue of fact as to whether the contract was for the rendering of services or for the sale of goods.

Three factors are helpful in determining the primary purpose of a contract: (1) the language of the contract; (2) the nature of the business of the supplier; and (3) the intrinsic worth of the materials involved. *Coakley and Williams, Inc. v. Shatterproof Glass Corp.*, 778 F.2d 196, 197 (4th Cir. 1985). Each of these factors weighs in favor of a finding that this contract was for the sale of goods.

Under the first factor, the district court correctly found that a number of indicia in the contract language signal that the contract was for the sale of goods. The UCC defines goods as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale." Ala. Code Ann. § 7-2-105(1). It defines the sale of goods as "the passing of title from the seller to the buyer for a price." Ala. Code Ann. § 7-2-106(1). The contract between Teledyne and RMS was rife with language peculiar to a transaction for the sale of goods. The contract was titled "purchase order" and consistently referred to the parties as "buyer" and "seller." The contract also specifically provided that "title and risk of loss to goods shall pass to Buyer upon receipt at Buyer's designated destination." This language indicates both that the items in question were moveables and that title to these items would pass from RMS to Teledyne upon completion of the transaction.

Further, the contract required RMS to provide a warranty of merchantability and fitness for a particular purpose. Such warranties are seldom, if ever, found in a contract for services. The contract additionally directed RMS to provide first article units for testing, a frequent requirement under government contracts for the sale of goods. These clauses are generally used to ensure "that the contractor can furnish a product that conforms to all contract requirements for acceptance." 48 C.F.R. § 9.302 (1995). This language makes clear that the

purpose of the contract was to facilitate RMS's sale of the AMTC systems to Teledyne.

The second factor also weighs in favor of a finding that the contract was for goods and not services. The district court found that RMS was in the business of manufacturing and selling AMTC systems using its own materials. This determination was correct. RMS initially offered to manufacture the AMTC systems for Teledyne without Teledyne supplying any of the materials. Such an offer demonstrates that RMS was capable of producing the product for sale using its own materials. Additionally, RMS was in the process of manufacturing AMTC systems for the U.S. military when it entered into this contract with Teledyne. In fact, RMS had already completed first article testing on the AMTC system for the government. The record clearly supports a finding that RMS was in the business of manufacturing and selling AMTC systems and not merely providing the services necessary to assemble such systems.

Although the district court did not explicitly address the third prong of the *Coakley* test, the intrinsic worth factor also weighs in favor of a contract for goods rather than services. While a service provider may supply some incidental materials for a project, a party that provides more than that is offering a unique finished good, not a service. As the district court noted, RMS supplied more than an incidental amount of material for the project. RMS was obligated under the contract to supply primer, paint, cleaning chemicals, consumables and hydraulic fluid. RMS did more than merely add value to the materials supplied by Teledyne; it provided both materials and labor to manufacture a highly specialized product that it sold to Teledyne.

The fact that Teledyne supplied the majority of the raw materials for the project does not change the underlying nature of the contract. RMS agreed to manufacture specialized military equipment and then pass title for that equipment to Teledyne for a price. This sort of contract is necessarily one for the sale of goods and is properly governed by the UCC.

### B.

RMS next argues that the court incorrectly applied the Virginia, rather than the Alabama, statutes of limitations to all counts of the complaint. The contract between RMS and Teledyne contained a choice of law clause stating that "[t]he rights and obligations of the parties hereto shall be governed by the law of the State of Alabama." RMS argues that this clause encompasses all claims arising out of the contract between these parties and therefore the complaint should be governed by Alabama contract law.*

When sitting in diversity, a federal court must apply the choice of law rules of the forum state, in this case Virginia. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Virginia law, the parties' choice of law will be enforced if it is "reasonably related to the purpose of the agreement." *Hooper v. Musolino*, 364 S.E.2d 207, 211 (Va. 1988). However, such clauses are only applied so far as the question before the court is one of substantive law. Virginia courts apply their own law "in matters that relate to procedure." *Id.* Therefore, even though the contract contains a provision generally choosing Alabama law to govern contract disputes, this choice of law provision does not extend to procedural questions.

Statutes of limitations are considered matters of procedure in Virginia courts, unless they are so bound up with the substantive law of a claim that the limitations period is itself considered substantive. *Jones v. R.S. Jones and Assoc., Inc.*, 431 S.E.2d 33, 35 (Va. 1993). There is no reason to depart from the general rule in this case. Statutes of limitation that apply to traditional rights of action in contract and tort are almost always procedural. *Id.* And courts that have specifically examined statutes of limitations in the context of the UCC have consistently found them to be procedural. *See, e.g.*, *Johansen v. E.I. Du Pont De Nemours & Co.*, 810 F.2d 1377, 1381 (5th Cir. 1987); *Natale v. Upjohn Co.*, 236 F.Supp. 37, 41 (D. Del. 1964); *Tammac Corp. v. Williams*, 1993 WL 330639 at 17 (W.D.N.Y. 1993). There-

---

*RMS argues that Ala. Code § 6-2-34, which provides a six year statute of limitations for any action arising out of a simple contract, applies to Counts I and III. We have already determined that the UCC applies to these counts of the complaint. Both the Virginia UCC and the Alabama UCC have a four year limitations period for breach of contract claims. Va. Code Ann. § 8.2-725(1); Ala. Code § 7-2-725(1).

fore, under Virginia's choice of law principles, Virginia law must govern the statutes of limitations in this case.

C.

Lastly, RMS contends that even if this court applies Virginia law, Counts II, IV, and V of the complaint, which are matters in equity, were timely filed and should not be dismissed. RMS argues that in Virginia "equity follows the law" and therefore an equitable claim arising from a written contract should be governed by Virginia's five year statute of limitations for written contracts. However, these claims are based on contracts implied in law and are therefore subject to a three year statute of limitations.

Virginia Code § 8.01-246(4) provides that actions based on unwritten contracts must be brought within three years of the cause of action accruing. This provision applies to both express unwritten contracts and contracts implied in law. *See Harbour Gate Owners' Ass'n v. Berg*, 348 S.E.2d 252, 257 (Va. 1986). All three of the claims in question are based on contracts implied in law. Count II of the complaint alleges that Teledyne promised to pay for the labor, equipment and materials supplied by RMS in performing under the contract. RMS asks the court to imply a contract for reasonable compensation for these items. In Count IV, RMS alleges that Teledyne was unjustly enriched by its settlement with Lockheed Martin and asks the court to imply an obligation to repay RMS the amount Teledyne benefitted in the settlement agreement for work done by RMS. Lastly, Count V alleges constructive trust. Again, RMS asks the court to imply a contract in law and find that RMS is the rightful owner of the settlement funds. Where, as here, the plaintiff seeks to have the court imply a contract in law, that contract is necessarily unwritten. Indeed, one Virginia court has specifically found both unjust enrichment and constructive trust claims subject to the three year statute of limitations. *Tsui v. Sobral*, 39 Va. Cir. 486, 488 (1996). Thus the district court correctly held that these claims were subject to the three year statute of limitations.

For the foregoing reasons, the claims of RMS were properly dismissed as untimely and the judgment of the district court is

*AFFIRMED*.